[1] This is an action for alienation of affections. The petition was originally in two counts and was filed in Washington County on the 10th day of March, 1947. A change of venue was taken to Crawford County. Count 1, for criminal conversation, was dismissed and a trial had upon Count 2. The answer was a general denial and a plea of the statute of limitations. Verdict for plaintiff for $1000.00 damages, defendant appealed.
[2] The evidence on the part of plaintiff was that he was married to his wife in 1921 and continued to live with her until shortly before Christmas, 1945. Five children were born of the marriage. The plaintiff testified that up until the year, 1941, his relations with his wife were all that could be expected but after that she became strange and seemed like she did not have much affection toward him. Sometimes she did, other times she didn't. She found fault about a lot of different things about the home and he noticed she had changed a great deal. This attitude continued from 1941 up until he obtained a divorce. At that time they were living at Richwoods, Missouri. This lack of affection began on her part in the fall of 1941. Some time later she asked plaintiff for a divorce and said the next time she married, she intended to get an older man who would stay home and care more for her. Defendant is older than plaintiff. The plaintiff was the operator of a dump truck and the defendant owned several of them. They used them around government projects in Indiana, Mississippi and elsewhere.
[3] In the fall of 1941, the plaintiff heard rumors that defendant and plaintiff's wife were going places together. He accused her of it and she vehemently denied it. He believed the denial. Just before Christmas in 1945, the plaintiff received further information and again accused his wife of having had sexual relations with defendant and she then admitted it. He filed suit for divorce on March 25, 1946 and a divorce was granted on Tuesday, April 16, 1946.
[4] At that time the defendant was operating a taxi cab at Richwoods, Missouri and and the plaintiff called him by phone, pretending he was a prospective passenger and asked him to come to the railroad station at DeSoto. When he came to the depot, he found plaintiff and plaintiff's wife there. Plaintiff asked him to go across the street to the office of his attorney, Mr. McKay, that he wanted to get some information from him. The plaintiff, his wife and defendant went to the attorney's office where the plaintiff told defendant that he had learned about his associations with his wife and he wanted to know if they were true. Defendant at first denied them but upon learning that plaintiff's wife had told her husband about it, he admitted that he had at one time gone to a tourist cabin with his wife, had taken her out riding and to various places and had given her the money to pay for a watch that she had at that time. He fixed no definite dates of these occurrences. He further admitted that one of the reasons for his *Page 632 
going to Indiana and Mississippi was to be near plaintiff's wife. There was then some conversation about a settlement of the controversy out of court but no agreement was arrived at. This conversation in Mr. McKay's office occurred between the time of filing of the divorce petition and the rendering of the decree.
[5] Mrs. Farrow testified as a witness for plaintiff, her husband. She said in the fall of 1941, she met defendant several times at a restaurant, beer joint and elsewhere, that she went riding with him and that they went to a cabin and there had sexual intercourse. That twice more in the fall of 1941, she had had intercourse with him in his car or truck. That shortly after that, he gave her the money to buy a watch and that she did purchase one. That he later made love to her, kissed her and told her that he loved her. She further testified that after that, her husband got a position in Indiana, operating a dump truck on a government project and that they went to that state. About three weeks later, the defendant, who was also engaged in dump truck operations, came to Indiana and operated one or more dump trucks on the same project with her husband. She stated that in Indiana she was not out with defendant except one time. He asked her to go out with him and she did. He took her and her daughter (at that time six years of age) to the park, and were gone about two hours, but that nothing out of the way occurred on this trip. That in Indiana and Mississippi she did not associate with him except to casually meet him at the bank, grocery store or elsewhere. That after all the dump truckers came back to Missouri from Indiana, they learned of a project in Mississippi and that she and her husband and the defendant and several others, who were operating dump trucks, went down to Yazoo, Mississippi and began working on another government project. That at no time did she go out with defendant there but she would at times meet him and that they discussed their previous association. The evidence shows that defendant was ill while in Mississippi, worked very little, if any, and his illness became so acute, he sent for his wife to come down and when he was able to come back to Missouri, they came back together. Plaintiff's wife testified at the trial that "I never had anything to do with him (defendant) in the last two years;" that she and plaintiff lived together as man and wife until shortly before Christmas, 1945, when upon being accused of her associations with defendant, she finally admitted it and her husband left her and sued for divorce. The evidence further showed that in 1941, a rumor had started connecting plaintiff and another woman, that plaintiff's wife heard about it and asked him about it and it was before that date that his wife's affections for him began to cool off. Defendant testified that he went to Indiana in 1942 and his wife testified the trip to Mississippi was in 1943.
[6] Appellant objects to Instruction No. 1 given at the request of plaintiff. The plaintiff asserts that no objection was made to this instruction at the trial and cites Holdman v. Thompson, Mo.Sup., 216 S.W.2d 72; Welty v. Niswonger's Estate, Mo.App., 217 S.W.2d 736. The appellant evidently recognized the merit in plaintiff's contention and has filed a motion to correct the transcript and attached thereto an affidavit of the trial judge stating that the transcript as originally filed, is incorrect and that as a matter of fact, appellant did object to Instruction No. 1. We are therefore sustaining the motion and shall treat appellant's objection to Instruction No. 1 the same as if said objection had been included in the original transcript. That instruction, after stating the abstract principle of law that a husband is entitled to the society, companionship, etc., of his wife, states: (parenthesized and italicized portion added by us.)
[7] "Therefore, if you shall believe from the evidence that the defendant wilfully and maliciously, (acted in concert orcooperated together) with the purpose and intent to cause the separation of the plaintiff's wife from him, and to cause her to remain apart from him, and that he did thereby accomplish such purpose and intent, then your verdict shall be in favor of the plaintiff, and you shall assess his damages at such sum as you may believe from the evidence *Page 633 
will reasonably compensate him for the deprivation and loss of his wife's society, comfort, companionship, protection, and aid."
[8] Appellant insists that Instruction No. 1 purports to cover the entire case and therefore is erroneous in not requiring the jury to find that the defendant did some wrongful act in order to cause the separation of the plaintiff and his wife and that it does not require the jury to find that the defendant did alienate plaintiff's wife's affections. This instruction is almost exactly like the instruction approved in Nichols v. Nichols, 147 Mo. 387, 48 S.W. 947, 948, except that it leaves out the words (italicized above) "acted in concert or cooperated together". It is true that ordinarily an instruction which purports to cover the whole case must contain all the elements that the jury must find in order to render a verdict against defendant. This instruction should have required the jury to find that there was some action on the part of defendant with the intent to alienate the wife's affections or of such a nature that alienation of her affections would be the natural result. The general rule is that an instruction which purports to cover the whole case but omits some of the essential elements is not cured by the omitted elements being set forth in an instruction given on behalf of the defendant, Walton v. A. B. C. Fireproof Warehouse Co., 233 Mo.App. 693, 124 S.W.2d 584.
[9] But it is also the rule that if the instruction states the required elements indefinitely or ambiguously, or in language which might be misleading, then an instruction on the part of the defendant, which clearly and specifically requires the finding of the essential elements does not conflict with plaintiff's instruction but instead makes it clear and definite, and the giving of the defective instruction is not error. McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37; Jenkins v. Missouri State Life Ins. Co., 334 Mo. 941, 69 S.W.2d 666; State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351; Bolino v. Illinois Terminal R. Co., 355 Mo 1236, 200 S.W.2d 352.
[10] When all the instructions read together correctly state the law and harmonize, the indefinite, ambiguous or misleading language in the plaintiff's instruction is cured. McDonald v. Kansas City Gas Co., supra.
[11] Bearing these rules in mind, we will examine all the instructions.
[12] Plaintiff's second instruction given by the court states that it is not necessary that the plaintiff prove he had the love and affection of his wife but that a stranger has no right to interfere with his domestic relations and destroy any possibility of future affection springing up between the spouses. That though the jury believes the home life of plaintiff and his wife was unpleasant, that fact would not justify the defendant in intermeddling with plaintiff's domestic affairs, and that,
[13] "* * * if you find he did so intermeddle, and if the jury believes from the evidence that plaintiff's wife still would have lived and remained with him if had not been for the wrongful acts, conduct and influence of defendant, if any, and she was induced to separate and remain apart from plaintiff by the intentional wrongful acts, conduct and influence of defendant and that said acts, conduct and influence were naturally calculated to cause such separation, then your verdict will be for the plaintiff, and against defendant."
[14] In Instruction No. 3, the court told the jury, on behalf of plaintiff, that it was unnecessary to prove that defendant directly requested plaintiff's wife to leave him or to remain apart from him,
[15] "* * * but if the jury believe from the evidence in the cause that defendant was intentionally guilty of such conduct as was calculated to prejudice plaintiff's wife against him, and to alienate her from him, and to induce her to leave him, to remain apart from him; and that such effect was intended by defendant to be produced, and was actually produced by his conduct, then the jury should find a verdict for the plaintiff."
[16] In Instruction No. 4, also given by the court at the request of plaintiff, the jury was instructed that the plaintiff was *Page 634 
entitled to the society, comfort, assistance, etc., of his wife free from wilful interference of others and that the law gives him a right of action against anyone who wilfully and wrongfully deprives him of those rights. The instruction then continues:
[17] "If, therefore, you believe and find from the evidence, plaintiff, Arvel Farrow and May Farrow were husband and wife and that they were living and co-habiting together as such husband and wife, and that prior to the time plaintiff separated from her, defendant wrongfully, wantonly and from improper motive persuaded and induced the said May Farrow to become cold and distant and to deprive the plaintiff of the society, comfort, assistance and affection of his said wife, then your verdict will be in favor of the plaintiff."
[18] On behalf of defendant, the court gave Instruction No. 7, which was as follows:
[19] "The court instructs the jury that in order to entitle plaintiff to maintain this action, the plaintiff must show the enticing of his wife, and that a wrongful act or acts of the defendant was the cause of the interference complained of; and, if the jury believe that the cause of interference complained of was the voluntary bestowal of the plaintiff's wife's affections upon the defendant, who did nothing wrongful to gain such affections, then it will be the duty of the jury to find a verdict for the defendant." Instruction No. 8, given at request of defendant, told the jury that if the plaintiff's conduct toward his wife were such as to render her life with him intolerable and that because of such conduct on his part, she withdrew her affections from him,
[20] "* * * and that such withdrawal of affections was not caused by any act or procurement of the defendant, then you will find the issues in favor of the defendant upon the second count of plaintiff's petition."
[21] Instruction No. 9, also given on behalf of defendant, was:
[22] "The court further instructs the jury that before you can find the issues for the plaintiff against the defendant, you must believe and find from the evidence that defendant intentionally influenced the wife of the plaintiff to withdraw her affections from plaintiff and desert him. It is not enough for plaintiff to show merely that defendant was friendly with the wife of plaintiff, knowing at the time that she and the plaintiff were having discord in their marital relations, nor is it sufficient that you should believe merely that defendant's conduct in his association with plaintiff's wife amounted to impropriety, or was even of a scandalous nature, but before you can find for plaintiff, it must be shown by the evidence that defendant's conduct, in his association with the wife of plaintiff was improper and wrongful, and further, that defendant intended by such conduct to cause plaintiff's wife to withdraw her affections from him or desert him, and, in addition to this, it must be shown by the evidence that such conduct on the part of the defendant Benjamin Roderique did in fact cause the wife of plaintiff to withdraw her affections from plaintiff or desert him. If plaintiff has failed to prove any one of these facts by the greater weight of the evidence, it will be your duty to find the issues for defendant."
[23] From the foregoing, it will be observed that the jury was six times told that before they could find for plaintiff, that they must find that defendant actively interfered in plaintiff's domestic relations with the object of destroying or alienating the affections of plaintiff's wife. Instruction No. 1, though ambiguous, infers that the jury must find some action on the part of defendant, and thereby did alienate her affections.
[24] We must assume that the jury was made up of men of average intelligence and we cannot conceive how any juror of average intelligence could read the instructions in this case on behalf of plaintiff and of defendant and be confused as to whether it was necessary for them to find active interference on behalf of defendant. We do not approve the form of Instruction No. 1 but read with the other instructions, we hold that the giving of it was not reversible error. *Page 635 
[25] Plaintiff testified to some admissions of the defendant that were made in the office of plaintiff's attorney at DeSoto. Before the court would admit any of this testimony, a hearing was had out of the presence of the jury and the evidence clearly shows that the admissions of the defendant were made before anything was said to him about trying to settle the controversy out of court. It is true that admissions made tentatively and hypothetically in an effort to compromise a law suit are not admissible because the law favors compromises and will not lay a stumbling block in the way by admitting statements made while trying to accomplish a settlement. Starnes v. St. Joseph Railway, Light Heat Power Co., 331 Mo. 44, 52 S.W.2d 852.
[26] But that is not the situation here. The attempt to compromise came from plaintiff and the defendant made no offer to pay anything. The admissions were made before anything was said relative to a compromise, were independent of it and it was not error for the court to admit evidence of them. 31 C.J.S. Evidence, § 287, page 1047.
[27] During the trial, plaintiff's wife was asked relative to the allegations in her husband's petition for divorce. The evidence had already shown, without objection, that plaintiff had obtained a divorce from his wife. She was asked if she know what the allegations in the petition were and over defendant's objection was permitted to state that "he claimed that I didn't treat him right; that I was cold toward him, and I wasn't treating him right, and then this came up and then he wanted his divorce, so I give it to him." Later an attempt was made to introduce the petition in the divorce case, the summons and the decree, no answer having been filed, but this offer was refused by the court and the attorney for the defendant stated, "Why not shorten the record and stipulate that a divorce was granted to the plaintiff upon his petition in the circuit court of Jefferson County on Tuesday, April 16, 1946?" This suggestion was followed. Ordinarily, a plaintiff cannot introduce in evidence the copy of a petition that he has filed because it is in the nature of self-serving declarations. Wilson v. Frankel, Mo.App., 61 S.W.2d 363.
[28] But in this case, the jury already knew that a divorce had been granted to the plaintiff and while evidence as to the allegations of the petition should not have been admitted, it was harmless error and not such as to justify the reversal of this case.
[29] Appellant urges that the action is barred by the statute of limitations. This defense was pleaded, was saved in the motion for new trial and is one of the assignments of error in the appellant's brief.
[30] Section 1014 of the Revised Statutes of Missouri 1939, Mo.R.S.A., specifies what actions should be brought within five years, and after specifically enumerating certain matters, it recites, "or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated; * * *." This is the only statute of limitations applying to actions for alienation of affections. In fact, it is conceded that this statute applies. See also 27 Am.Jur. Page 140, Section 541.
[31] An action of this character is founded upon loss of consortium. This term, when applied to alienation of affections includes the right of either spouse to the affection, society, assistance, companionship and conjugal fellowship of the other. 42 C.J.S., Husband and Wife, § 665, page 319; 27 Am.Jur. Page 125, Sec. 524; Tunget v. Cook, Mo.App., 94 S.W.2d 921; Pratt v. Daly, 55 Ariz. 535, 104 P.2d 147, 130 A.L.R. 341; Hobbs v. Holliman, 74 Ga. App. 735, 41 S.E.2d 332.
[32] There can be a loss of consortium without the actual separation of the spouses and although they continue to occupy the same house, either may have a cause of action for alienation of affections against one who causes a loss of consortium. 42 C.J.S., Husband and Wife, § 667, page 320; DeFord v. Johnson, Mo.Sup., 177 S.W. 577; Rinehart v. Bills, 82 Mo. 534, 52 Am.Rep. 385. One, who as a defense relies on the statute of limitations, has the burden of proving that the action is *Page 636 
barred thereby. Kopp v. Moffett, 237 Mo. App. 375, 167 S.W.2d 87. The defendant has not met this burden. It is true, according to the evidence, that the acts of sexual intercourse were all in 1941, but the evidence shows that sometime after that, the defendant took plaintiff's wife to Festus, Missouri. It shows that he also followed her to Indiana in 1942 and according to his admissions, followed her to Mississippi in 1943. In Indiana he took her to a park, met her frequently and in Mississippi he also met her frequently at which times they discussed their previous associations. The evidence does not show that her affections were entirely alienated in 1941, but the inference is that they began at that time and increased until she asked her husband for a divorce. They lived together until December, 1945, and were finally separated by divorce in the spring of 1946. The petition was filed on the 10th day of March, 1947 and to come within the statute of limitations, it was incumbent upon defendant to show by a preponderance of the evidence that the alienation of the wife's affections occurred more than five years prior to that time. He has failed to do so.
[33] Defendant objects to Instruction No. 4 and argues that it was erroneous. The transcript does not show that appellant objected to this instruction when given. Before we can review instructions, an objection must have been made at the trial so as to give the trial court the opportunity to correct his mistake, if any. Holdman v. Thompson, supra; Welty v. Niswonger's Estate, supra.
[34] The defendant also says that the evidence in this case supported only a cause of action for criminal conversation, if any, and that was barred by the statute of limitations. With this contention, we cannot agree. It is true that the statute of limitations for criminal conversation is two years, Sec. 1016, R.S.Mo. 1939, Mo.R.S.A., but this is not such a suit and the criminal conversation proved against defendant was merely one of the many acts done by the defendant in alienating the affections of plaintiff's wife. He took her riding on several occasions, made love to her, asked her if she loved him, told her he loved her, had sexual intercourse with her, discussed their previous associations, in fact all his actions were calculated to alienate the affections of plaintiff's wife and cause her to be dissatisfied with her marital status. This was a violation of plaintiff's rights for which he is entitled to redress. We have carefully considered all the assignments of error raised by the defendant. Finding no reversible error, the judgment of the trial court should be affirmed. It is so ordered.
[35] BLAIR and McDOWELL, JJ., concur: *Page 838