In re the MARRIAGE OF Sharon Ann
REYNOLDS, Appellant,

and

Larry Douglas Reynolds, Respondent.

No. KCD 28102.

Missouri Court of Appeals,
Kansas City District.

June 1, 1976.

James H. Counts, Stephen J. Briggs, Morton, Reed & Counts, St. Joseph, for appellant.

Theodore M. Kranitz, Kranitz & Kranitz, St. Joseph, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The court ordered dissolution of the marriage and awarded custody of the two children, a boy of seven years and a girl of five, to the father. The mother appeals from the order of custody.

The evidence was that the parties had been married about eight years until dissolution. Sometime within three years, according to the husband, the marriage was threatened by a dalliance between the wife and one Jobes. He confronted them and as a result she promised to conduct herself as a proper wife. They reconciled until May of 1972 when she filed for divorce, but they reconciled again several months later. Her behavior continued to be unaccountable; she left in the early evening and did not return until midnight. On those occasions, the husband attended the children, prepared their meals and put them to bed. The wife was not candid about her activity and accused him of jealousy. Then, one night in September of 1974, the wife left him a note which suggested an action for dissolution was in preparation, and invited his departure. The husband left the home and this action followed.

On the issue of fitness of the mother as custodian of the children, the husband offered the testimony of private investigator Martin and the neighbors Punzo. The testimony of these next-door neighbors was that about Christmas of 1974, Jobes commenced visits to the wife at the residence, parked his car in the garage, and spent the nights.

Martin was engaged by the husband to investigate and record the activities of the wife commencing December of 1974. Surveillance of the residence disclosed the Jobes car parked in the driveway throughout the night; Jobes was seen leaving the premises about midnight. On another occasion, the wife picked up Jobes, went to his apartment and spent the night. This pattern was repeated.

The wife admitted cohabitation and intimacy with Jobes, but not until after final separation and the pendency of the dissolution petition. It was her testimony that her intimacy was never acted in the presence of the children, nor did Jobes remain at the house overnight when the children were there. She admitted that earlier during the marriage she had told her husband about her affection for Jobes, that her marriage then was fraught with problems, but that she did not give herself to Jobes until the final separation in late 1974.

It was her testimony that her husband had beaten her twice; the husband acknowledged one incident brought on, he said, by the exasperation of her nighttime escapades. She testified as to the care she had for the children, and she produced witnesses who described her as an immaculate housekeeper, caring mother and skilled cook. This evidence was disputed by the husband who described the children as ill-kempt, the house indifferently kept, and her cooking skills unused.

There was other evidence of this nature which was in basic dispute. The trial court made an explicit finding that he believed and accepted the testimony of the husband as it related to summer of 1974, the focus of much of the evidence. That evidence bore on the disregard by the wife of her maternal responsibilities as well as of the management of the home and care of the husband. In addition to her unexplained nocturnal absences, she committed herself to a college night course which kept her away from her family and home duties. Although the husband earned about $22,500 annually as an electrician, she assumed employment during the day and then enrolled for a nighttime psychology course.

The court found also that the wife lived in open adultery when the children were in the home, and although the conduct was not conclusively harmful to the children then, the lack of concern for the children was demonstrable. This behavior, considered with her disregard for the care of the children and home, was the basis for the conclusion of the trial court that the appellant wife was unfit as custodian of the children.

The court found the father, then 29 years of age, was a fit and proper person to care for the children. There was evidence that he was then living with his married brother in a residence commodious enough for him and the two children. The paternal grandmother each day transported the children to and from school to this residence. The court determined that this, as well as plans for the future expressed by the respondent husband, represented an adequate design for the care of the children.

Our review of this court tried case is governed by Rule 73.01. We may not set aside a judgment in such a cause unless it is against the weight of the evidence or wrongly declares or applies the law. Our power to set aside a decree as against the weight of the evidence must be exercised with caution and only "with a firm belief that the decree or judgment is wrong". *Murphy v. Carron*, 536 S.W.2d 30, Mo. banc, adopted May 5, 1976. We find that the decree is supported by the evidence and conclude that the judgment was properly entered.

The judgment is affirmed.

All concur.