Larry Douglas REYNOLDS, Appellant,

v.

Russell Earl JOBES, Jr., Respondent.

No. KCD 28935.

Missouri Court of Appeals, Kansas City District.

April 3, 1978.

Kranitz & Kranitz, Theodore M. Kranitz, St. Joesph, for appellant.

Robert B. Randolph, St. Joseph, for respondent.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ROBERT R. WELBORN, Special Judge.

Action for damages for alienation of affections of plaintiff's wife and for criminal conversation with plaintiff's wife. Jury trial resulted in verdict for defendant on both counts. Plaintiff appeals.

Larry Douglas Reynolds, plaintiff-appellant, married Sharon Ann Pinson September 30, 1967. Two children were born to the marriage. In 1972, Sharon filed suit for divorce, but the action was dropped. On September 5, 1974, she filed a petition seeking dissolution of the marriage. On March 14, 1975, the marriage was dissolved by decree of the Buchanan County Circuit Court. The award of custody of the children to the husband was the subject of an appeal to this court which affirmed the judgment of the circuit court awarding custody to the husband. *In re Marriage of Reynolds,* 537 S.W.2d 864 (Mo.App.1976). On April 7, 1975, Sharon married Russell E. Jobes, Jr., the defendant in this action.

According to plaintiff, he and Sharon had been happily married until Jobes appeared on the scene around 1970. Plaintiff and Jobes had worked together as electricians before Larry and Sharon were married. Jobes and his then wife and the Reynoldses visited back and forth and around Decoration Day, 1970, the four of them took a trip to Wyoming. Larry stated that Sharon's attitude toward him began to change shortly afterwards. In July, 1970, Larry confronted Jobes about having an affair with Sharon. According to Larry, Jobes acknowledged that he was. Larry told Jobes to stay away from Sharon. After learning that Jobes was not doing so, Larry again encountered Jobes and struck him in the mouth. Larry again warned Jobes to stay away from his wife.

Plaintiff produced evidence that Sharon and Jobes met from time to time at various places, including at the Reynolds house and an apartment of an acquaintance. According to Larry, he didn't become aware "for sure" that Jobes and Sharon "were running together" until after he and Sharon separated on September 4, 1974.

As summarized by appellant, defendant's evidence "went to a denial of any misconduct prior to December, 1974, and a denial by Sharon that her marriage to Reynolds was a happy one." By answer to interrogatories, Jobes admitted: "From and after December 11, 1974, Russell Jobes and Sharon Jobes (sic) were associating with each other and had sexual intercourse together."

The defendant's answer asserted that it was not the actions and conduct of the defendant which drove Sharon from plaintiff but that plaintiff by his mistreatment of Sharon made life with plaintiff intolerable for her and caused ultimately the dissolution of the marriage. On behalf of defendant, there was evidence that plaintiff had abused Sharon physically and by name calling, commencing in 1970 and until the

action for divorce filed in 1972. Defendant also presented evidence that plaintiff had struck and kicked Sharon in the parking lot at the Kansas City baseball stadium in the summer of 1974. Three couples had driven together to the game and when Sharon and Larry got into an argument about her not going to the game, Larry knocked Sharon down and kicked her. According to Larry, Sharon fell when she struck at him and he did not strike her. He had the same explanation for an altercation which occurred the night before the two separated in September, 1974. According to Sharon, she came home from class at about 10:30 P.M. Larry called her a "dirty bitch," choked and hit her, knocking her head against a cabinet, causing a "big cut." He knocked her to the floor and kicked her in the breast.

The defendant also alleged that plaintiff "actively and passively" consented to defendant's intercourse with Sharon after the separation of plaintiff and his wife. "With the knowledge that Defendant was associating himself with Plaintiff's wife, Plaintiff told his wife that she could associate with the Defendant and do as she pleased. At said time and up to the time of the dissolution of the marriage between Plaintiff and his wife, Plaintiff had no concern for the relationship between Defendant and his wife because Plaintiff was dating and associating himself with another woman."

According to Sharon, in the latter part of November or the first part of December, 1974, she had a conversation with plaintiff and plaintiff told her she could date anyone she wanted "and he could date anyone he wanted to because of the new divorce laws." Plaintiff told Sharon he had been dating his lawyer's secretary. A St. Joseph school teacher had dates with plaintiff on October 19, 25, 27 and November 1, 1974.

Sharon testified that she had no sexual intercourse with defendant from the date of her marriage to plaintiff until December, 1974.

On this appeal, appellant has placed his contention of error in five categories:

1. Errors in taking evidence. 2. Errors in trial procedure. 3. Errors in jury instructions. 4. Errors in hearing argument. 5. General error. These contentions will be considered in order.

1. Errors in taking evidence.

■■■ A. Upon objection by defendant's counsel, plaintiff's counsel was prevented from inquiring of plaintiff's witnesses concerning defendant's reputation in the community "for associating with other women" and "for running around with other men's wives." There was no offer of proof as to what the witnesses would have answered. Therefore the trial court cannot be convicted of error. *Thayer v. Sommer*, 356 S.W.2d 72, 80–81[11, 12] (Mo.1962); *Stringer v. Reed*, 544 S.W.2d 69, 78[19] (Mo. App.1976). In any event, the law is well established that the character of a party to a civil action cannot be inquired into if not put in issue by the nature of the proceedings, such as in libel, slander, malicious prosecution, etc., where evidence of good character is relevant on the issue of damages. *Browning v. Browning*, 226 Mo.App. 322, 41 S.W.2d 860, 866–868[1–3] (1931).

Cases relied upon by appellant allowing evidence of character of complainant in rape cases do not provide a rule applicable to civil proceedings. 1 Wigmore on Evidence, § 64, p. 472 (3rd ed., 1940).

■■■ B. Upon rebuttal, plaintiff offered the testimony of plaintiff's mother that, when the parties to the marriage separated in 1972, Sharon came to her and begged her to intervene with Larry to take her back. When the defendant objected to the testimony as improper rebuttal, plaintiff offered the evidence to rebut Sharon's testimony that Larry begged her to come back. As defendant pointed out, that was not Sharon's testimony. She testified merely that "Larry called me and we got together and we started talking and we decided that we wanted to make our marriage last and we was going to forget about all the other stuff and he was going to quit drinking and calling me names and quit being mean and stay home and be a father and better all over. We tried. We went

back together." Therefore, the testimony was not proper rebuttal on that matter. Plaintiff's counsel then enlarged upon his offer of proof and included the tender of the testimony to rebut Sharon's testimony that Larry initiated the reconciliation and, further, as evidence that Larry was not, as Sharon testified, "a violent and dangerous man from whom she was trying to get away." The offered rebuttal testimony was not contradictory of testimony by Sharon. As above noted, she testified that Larry called her but she did not say that he suggested the reconciliation. The proffered testimony did not contradict testimony of physical mistreatment of Sharon by Larry. Such occurrences were not totally inconsistent with her seeking the reconciliation, as the mother would have testified. No error on the part of the trial court has been demonstrated.

■ C. Sharon testified that she was four months pregnant at the time of her marriage to Larry and that Larry did not want to marry her but finally decided he would, "though he didn't love me." A former coworker of Larry testified that Larry told him that he "had to get married." "I don't want to, but I will have to marry her." Appellant describes such testimony as "unique in the annals of actions for alienation of affections, going as it does to a period before the plaintiff and his wife were even married." Such assertion may or may not be accurate but it does not suffice to carry appellant's burden of showing error on the part of the trial court. No authority is cited in support of appellant's proposition.

Appellant argues alternatively that the trial court erred in excluding in rebuttal an excerpt from Sharon's "Wedding Book," identified by Larry as being in Sharon's handwriting, describing their "romance" in which she stated that she and Larry "hit it off real good" from their meeting in December, 1966, that after two months of dating Larry proposed marriage and she accepted. "By then I had decided he was the guy for me." A wedding date was set for September 30, 1967.

Appellant argues that this evidence rebutted Sharon's testimony to the circumstances of their marriage.

■ The trial court did not err in this regard. The less than romantic aspects of the marriage would hardly have been recorded in the "Wedding Book." Larry acknowledged that Sharon was pregnant at the time of their marriage, although he placed its onset subsequent to the engagement. The trial court's refusal of the offered evidence was not erroneous.

■ D. Appellant states in Point IV of his brief that the trial court erred in refusing, on the basis of defendant's judicial admission of sexual intercourse with plaintiff's wife, to permit plaintiff to adduce evidence on the manner and places of such activity, "although the same were relevant and material to an evaluation by the jury of defendant and such propensity for misconduct of the matter in issue in this cause, and his credibility." Appellant cites no offer of proof for such purpose and does not advance any argument in support of the point stated. Therefore, no basis for finding of error has been demonstrated.

2. Errors in trial procedure.

A. Appellant asserts that the trial court erred in overruling his motion for summary judgment on Count Two of his petition for criminal conversation. Appellant's motion was based upon respondent's answers to interrogatories and deposition testimony wherein he acknowledged sexual intercourse with Sharon in either November or December, 1974, knowing that she was then still married to appellant. The motion included the following questions and answers from respondent's deposition:

"Q And Mr. Reynolds wasn't putting you up to this, was he?

"A (sic) To having relations with her?

"A (sic) No, sir.

"Q He didn't connive with you to take her to bed, did he?

"A No, sir.

"Q He never talked to you about it?

"A Huh-uh.

"Q And you never talked to him about it either?

"A About seeing her?

"Q Yes.

"A No. .

"Q And, so far as you know, he wasn't setting you up with Sharon, was he?

"A Not that I know of."

Appellant asserts that respondent's own answers admitted the act charged and excluded any defense based on connivance by appellant in the conduct.

Respondent's reply points to his answer in which he asserted the defense of active and passive "consent to defendant's intercourse with plaintiff's wife * * *." Respondent has ignored the requirement of sub-paragraph (e) of Rule 74.04, as follows:

" * * * When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

■ However, in view of the requirement of sub-paragraph (h) that the party seeking summary judgment on an issue triable by a jury or the court demonstrate his right thereby by "unassailable proof * * as a matter of law" the trial court will not now be held to have erred in sustaining appellant's motion. The admissions of respondent went to the defense of connivance, but the defense asserted was consent. The terms are sometimes used interchangeably in cases such as this. However, they are not synonymous and there having been no affidavit or other proof, negativing consent rather than connivance, the trial court was justified in refusing the drastic remedy of summary judgment.

B. Appellant contends that the trial court erred in overruling his motion for mistrial on the grounds that in his opening statement, counsel for defendant had asserted as statements of intended proof "facts" which could not be admitted at the trial. Appellant's motion was directed at statements of respondent's counsel concerning mistreatment of Sharon by appellant, etc. The only objection voiced during the presentation of the statement was that respondent's counsel was "arguing." A second general objection was withdrawn.

■ The opening statements were the last action taken on the first day of the trial. Appellant's motion for a mistrial was filed the next day. The trial court did not err in overruling the motion. It was incumbent upon appellant to make a timely objection to the portion of the statement he deemed objectionable. A timely objection would have been one made in the course of the statement, thereby affording the court an opportunity to correct any error which might have occurred. *Brown v. Thomas*, 316 S.W.2d 234, 237[8] (Mo.App.1958). Absent such objection, the trial court is not to be held to have abused its discretion in overruling the subsequent motion for a mistrial. *State ex rel. State Highway Comm. v. Drisko*, 537 S.W.2d 645, 648[2–6] (Mo. App.1976).

C. At the conclusion of the presentation of his rebuttal evidence, appellant filed a motion for mistrial "or other relief." The motion was based upon the trial court's sustaining respondent's objection to a question put to Sharon by appellant's counsel in which he referred to the divorce proceedings and asked Sharon to "tell us where you ever told any other judge in any other proceeding about all these terrible things [Larry had done]." An objection was sustained, the trial court noting that such matters would not have been taken up in the dissolution proceedings. Appellant's counsel suggested they would have been relevant in the child custody matter, but the trial court sustained the objection. Appellant's motion asserted simply that he should have been permitted to inquire into these matters and asked alternatively for a mistrial or for the recall of Sharon for cross-examination on such matters. (In this court appellant has added the trial court's refusal, on the basis of defendant's admission re

sexual intercourse with Sharon, to permit cross-examination as to the date of such occurrences. His motion in the trial court contains no reference to a ruling in this regard so that complaint will not be considered here.)

■■■■ Appellant's motion sought relief entrusted to the discretion of the trial court, i. e., a mistrial (*Golian v. Stanley*, 334 S.W.2d 88, 91[1–3] (Mo.1960) or recall of a witness. *Bailey v. Chapman*, 41 Mo. 536 (1867). Having based his claim of error upon refusal of such relief, the burden is upon appellant to demonstrate clear abuse of discretion.

■■■ The failure of a witness to mention upon a previous judicial proceeding matters which might ordinarily have been expected to be referred to may have some value for impeachment purposes when the witness testifies to such matters at a subsequent trial. 3A Wigmore on Evidence § 1042, p. 1056 (Chadbourn Rev., 1970). As suggested by appellant's counsel the conduct of appellant might have been relevant on the child custody aspect of the dissolution proceedings. However, any error on the part of the trial court was harmless. The transcript of the dissolution proceedings has been filed as an exhibit in this court. Examination reveals that Sharon did testify then to appellant's beating her the night before the separation in September, 1976, and also to the incident at the ball game in Kansas City. No good purpose would have been served by having the witness, as requested by the question, search the transcript and point out such testimony.

3. Errors in Jury Instructions.

Numerous objections are raised involving instructions. Instruction No. 2 was the burden of proof instruction. Instructions Nos. 3, 4 and 5 dealt with the alienation of affections count. They read as follows:

### "INSTRUCTION NO. 2

"In these instructions you are told that your verdict depends on whether or not you believe certain propositions submitted to you. In determining whether or not you believe any proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. The burden is upon plaintiff to cause you to believe the propositions necessary to support his claims against defendant. The burden is upon the defendant to cause you to believe the propositions necessary to support his defenses that plaintiff caused his wife to leave him or that she voluntarily bestowed her affections upon defendant who did nothing wrong to gain such affections, as submitted in Instruction No. 5, and that plaintiff consented to his wife associating with defendant or that defendant did not have illicit sexual intercourse with plaintiff's wife, as submitted in Instruction No. 11. If the evidence in the case does not cause you to believe a particular proposition submitted or if you are unable to form a belief as to any such proposition, then you cannot return a verdict requiring belief of that proposition."

### "INSTRUCTION NO. 3

"Your verdict must be for plaintiff on Count One of his petition if you believe:

"First, a marriage relationship existed between plaintiff and Sharon Ann Reynolds which defendant induced and influenced plaintiff's wife to leave and abandon, and

"Second, defendant caused Sharon Ann Reynolds to leave and abandon her marriage with plaintiff, and

"Third, defendant did so intentionally and without justification or excuse, and

"Fourth, plaintiff was thereby damaged, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 5."

### "INSTRUCTION NO. 4

"Your verdict must be for the Defendant on Count I of Plaintiff's Petition if you do not believe that Defendant intentionally and without justification or excuse induced and influenced Plaintiff's wife to leave and abandon her marriage with Plaintiff and Plaintiff sustained damage as a direct result thereof."

"INSTRUCTION NO. 5

"Your verdict must be for the Defendant on Count I of Plaintiff's Petition if you believe either Plaintiff caused his wife to leave him or Plaintiff's wife voluntarily bestowed her affections upon the Defendant who did nothing wrong to gain such affections."

■ To begin with Instruction No. 5, appellant contends that the instruction "is not in the form or language approved by the authorities cited in support of it nor supported by said authorities." That is not a statement which provides a basis for error on the part of the trial court. Whether or not the respondent cited proper authorities in support of the instruction which he tendered, the question is whether or not the instruction correctly states the law. The point stated by appellant, taken verbatim from his motion for new trial, does not raise that issue and presents nothing for appellate review.

■ Appellant also contends that Instruction No. 5 is not a proper converse instruction. However, this is obviously not a converse but a submission by the respondent of his affirmative defenses to appellant's alienation of affections claim.

■ Appellant attacks Instruction No. 4 on the grounds that it did not properly converse Instruction No. 3. The instruction follows the First Method of conversing appellant's verdict-directing instruction. It converses elements of the verdict-directing instruction in the language there employed. No authority is cited in support of the error complained of and there has been no demonstration that the instruction given was erroneous.

Appellant complains that in Instructions Nos. 4 and 5, respondent gave two converse instructions. As above pointed out, Instruction No. 5 was not a converse, so this complaint is without merit.

■ Appellant complains that the reference in Instruction No. 2 to the defense submitted in Instruction No. 5, i. e., "plaintiff caused his wife to leave him or that she voluntarily bestowed her affections upon defendant who did nothing wrong to gain such affections" was "an excessive restatement" of such defenses, "not in accord with the proper reference required in notes to MAI 3.01." He complains particularly that the words "who did nothing wrong to gain such affections" are argumentative. Perhaps some more abbreviated version of the defenses offered by the defendant would have been possible. However, they do not admit of a well-known brief descriptive terminology, as, for example, contributory negligence does. Reference to the defenses was required and the trial court is not to be faulted for employing the language of the defensive instruction. Appellant has also attacked the validity of the defense, but his assignment of error was based upon the form, not the substantive content of the reference language.

The objection that the reference to Instruction No. 5 was erroneous because that instruction was erroneous is without merit, there having been no showing that Instruction No. 5 was erroneous. The same conclusion applies to the objection that the reference to Instruction No. 5, inserted by the court in the tail of Instruction No. 3, was to an erroneous instruction.

■ Appellant complains of error in Instruction No. 8, offered by respondent and dealing with mitigation of damages. Inasmuch as the jury found for the respondent on the issue of liability on the alienation of affections count, any error in instructions dealing with damages was harmless. *Killian v. Wheeloc Engineering Company*, 376 S.W.2d 147, 149–150[4] (Mo.1964); *Take v. Orth*, 395 S.W.2d 270, 276[8, 9] (Mo.App. 1965).

■ Appellant complains of the order in which the court placed Instruction No. 16 offered by appellant. It instructed the jury, in effect, that the jury could find for plaintiff on the alienation of affections count on circumstantial evidence. Instructions Nos. 3 through 8 dealt with Count I, alienation of affections. Instructions Nos. 9 through 15 dealt with Count II. Instruction No. 15 was similar to No. 16 except

that it dealt with Count II. The placing of Instruction No. 16 in sequence with other instructions on Count I may well have been a more logical choice. However, the trial court may give instructions in such order as deemed "advisable," absent direction in MAI. Rule 70.01(d). No abuse of discretion here has been demonstrated that would produce reversible error.

Questioned Instructions Nos. 9, 10 and 11, dealing with the criminal conversation count were as follows:

### "INSTRUCTION NO. 9

"Your verdict must be for plaintiff on Count Two of his petition if you believe:

"First, a marriage existed between plaintiff and Sharon Ann Reynolds, and

"Second, while plaintiff and his wife were married to each other, defendant had illicit sexual intercourse with plaintiff's said wife, and

"Third, such sexual intercourse was without the connivance of or consent of plaintiff, and

"Fourth, plaintiff was thereby damaged, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 11."

### "INSTRUCTION NO. 10

"Your verdict must be for the Defendant on Count II of Plaintiff's Petition if you do not believe that while Plaintiff and his wife were married Defendant had illicit sexual intercourse with Plaintiff's wife and such intercourse was without the consent of Plaintiff and Plaintiff was thereby damaged."

### "INSTRUCTION NO. 11

"Your verdict must be for the Defendant on Count II of Plaintiff's Petition if you believe either Plaintiff expressly or impliedly consented to his wife associating with the Defendant, or Defendant did not have illicit sexual intercourse with Plaintiff's wife."

The problems with these instructions arise, in part, from the form of appellant's verdict-directing instruction on this issue.

He submitted Instruction No. 9, to which the court added the tail. Appellant patterned the instruction upon one quoted in *Lewellen v. Haynie,* 287 S.W. 634, 642–643[8] (Mo.1926). The instruction as originally quoted required the jury to find that the defendant did "hold sexual intercourse with plaintiff's said wife," subsequently referring to "said act of illicit intercourse." In what purports to be a second quotation of part of the same instruction by the court, the word "illicit" appears between the words "hold" and "sexual." This is the form of the instruction given upon retrial of the same case. *Lewellen v. Haynie,* 25 S.W.2d 499, 504–505[14–16] (Mo.App.1930). The instruction in both cases required the jury, in order to find for plaintiff, to find that the act of the defendant was "without his consent or connivance." No point was made in this latter regard, but consent is generally considered a matter of defense (41 Am.Jur.2d Husband and Wife, § 479, pp. 404–405 (1968)), and absence of consent is not generally regarded as an element of the wrong. Id., § 476, pp. 402–403.

In this court, appellant complains of respondent's submission which would have permitted the jury to find that defendant did not have illicit sexual intercourse with plaintiff's wife (Instructions Nos. 10 and 11). Appellant asserts that such denial is in the face of respondent's judicial admission that, after December 11, 1974, he and Sharon "were associating with each other and had sexual intercourse together." Appellant also complains of the insertion by the court of the words "that defendant did not have illicit sexual intercourse with plaintiff's wife, as submitted in Instruction No. 11" on the same grounds. Respondent's response is that he did not admit "illicit" sexual intercourse, the ultimate issue in the case.

The problem arises because appellant used the superfluous (for purposes of his submission) term "illicit" in his verdict-directing instruction. In fact, had appellant offered a proper instruction, the court would have been obliged to eliminate the issue of occurrence of sexual intercourse

between respondent and Sharon while the latter was married to appellant, all of which was not disputed. That would have left for jury consideration only the issue of consent (properly as a matter of defense) and damages.

■■■ Appellant, however, chose the form of submission and thereby opened the door for respondent to converse the submitted "illicit" sexual intercourse, which respondent did not admit. Appellant contends that the converse of the damage issue was erroneous because he was entitled to damages if the jury found defendant had criminal conversation with his wife. See *Scheffler v. Robinson*, 159 Mo.App. 527, 141 S.W. 485, 487[4] (1911). Appellant's verdict-directing instruction proposed the finding of damages. Therefore, respondent was permitted to converse the required finding.

Appellant attacks the submission of the defense of consent on the grounds that it was not supported by evidence. The basis of the defense was Sharon's testimony that appellant told her: "I could date anyone I wanted and he could date anyone he wanted to because of the new divorce laws * * *."

The Restatement of Torts (2d) (1977) speaks of consent barring an aggrieved spouse from recovery for adulterous relations in terms of "actual" and "apparent," the latter consisting of "a manifestation to the actor that leads to the reasonable belief that the aggrieved spouse is willing for the marital interests to be invaded." Vol. 3, § 687, comment b, p. 489. Such consent need not be communicated to the actor. "The aggrieved spouse's willingness may be manifested to the other spouse * * *." Id., comment c.

Appellant, on the basis of *Comte v. Blessing*, 381 S.W.2d 780, 788[12, 13] (Mo.1964), argues that Missouri does not recognize express or implied consent as a defense, apparently contending that the only defense is "active or passive connivance." However, in that case, the court recognized that "implied or express consent or connivance" as a defense and respondent's choice of the language "expressly or impliedly consented" were not erroneous.

■■ The implied consent, so recognized, is the equivalent of "apparent" consent of the Restatement, supra. It was for the jury to determine whether or not, on the basis of Sharon's testimony and the attending circumstances, appellant had consented to invasion of his "marital interests" and the issue was therefore properly submitted.

■■ Appellant's submission of lack of consent in his verdict-directing instruction has resulted in objections that respondent submitted the issue of consent twice in Instructions Nos. 10 and 11. Instruction No. 10 was respondent's converse and properly conversed the matters submitted in appellant's verdict-directing instruction, including the element of consent. Instruction No. 11 was intended as an affirmative defense instruction. The burden properly was upon the respondent to establish that defense and he had the right to submit that defense.

■■ Instruction No. 11 submitted not only consent but also authorized a verdict for defendant if the jury believed that "defendant did not have illicit sexual intercourse with plaintiff's wife." This submission was somewhat in the form of a third method converse under MAI 33.01. However, Instruction No. 3 placed upon respondent the burden of proof on this score. Defendant thereby assumed a burden greater than that required of him. At the most, the inclusion of this phrase in Instruction No. 11 was harmless error.

No error warranting reversal of the judgment has been demonstrated. However, such conclusion does not mean that for future guidance the instructions given are models in either substance or form.

4. **Errors in Argument.**

Appellant objects to the trial court's rulings sustaining objections to his attorney's argument. The appellant points to three instances in which the trial court sustained respondent's objection that appellant's argument was beyond the evidence. There is no need to detail the argument and the

state of the evidence. In at least two of the instances, the trial court's conclusion was demonstrably correct. In the third in which counsel argued that defendant's former wife who testified for defendant had divorced him, the witness's testimony is susceptible of construction according to the statement to which objection was made, but it related to a remote, collateral matter which would not afford a basis for reversible error.

Appellant also objects to the trial court's sustaining objection to argument that defendant kept plaintiff and Sharon from "mending" their marriage. Defendant objected to the argument on the grounds that there was no evidence of any attempt on the part of plaintiff to mend the marriage after October, 1974 and the objection was sustained. Appellant contends that regardless of evidence on the subject. respondent had no "right to interfere" or cut off any chance of affection springing up in the future. *De Ford v. Johnson*, 152 Mo.App. 209, 133 S.W. 393, 395 (1911).

 Although defendant had no right to interfere and cut off a chance of reconciliation, argument that he did in fact so interfere would still require a factual basis. The appellant does not point to any evidence of attempted reconciliation. Therefore, the trial court's ruling was not error.

5. General Error.

Appellant contends that the verdict in favor of defendant on Count II is against the evidence in view of the admission of defendant to sexual intercourse with plaintiff's wife while she was married to plaintiff. As above pointed out, the defense of consent was involved and made an issue for the jury.

No error in overruling appellant's motion for new trial on the grounds which have been discussed has been demonstrated.

Judgment affirmed.

All concur.