**Denice KRAUS, Plaintiff-Respondent,**

v.

**Carole KRAUS, Defendant-Appellant.**

**No. 48321.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 25, 1985.

Walter D. McQuie, Montgomery City, for defendant-appellant.

John C. Garavaglia, St. Louis, for plaintiff-respondent.

KELLY, Judge.

Carole Kraus[1] appeals from a judgment of the St. Louis County Circuit Court in an alienation of affections action and an award of $130,000.00 actual damages. On appeal she contends that the trial court submitted the case to the jury on an erroneous verdict director instruction, the refusal of the trial court to admit into evidence that respondent and her husband, whose affections were allegedly alienated, had lived together for two (2) years prior to their marriage and while they were married to other persons was error, and that the $130,000.00 damages award was excessive. We affirm.

The facts as the jury could find from the evidence were that Denice Kraus, the respondent, and Charles Kraus were married on November 20, 1974. One child, a girl, was born four months prior to the marriage. Both Denice and Charles had previously been married to other persons.

On May 11, 1976, Denice and the child were involved in a motor vehicle accident in which Denice suffered a skull fracture, a broken back, and a broken leg. After the accident she learned that she had been pregnant. Fearing that the fetus would not be born healthy because of the pain medications she was taking she decided to, and did, abort the pregnancy.

When Denice left the hospital she was required to wear a body cast severely limiting her movement. Appellant, and another girl, Terry Righter Sappington, were employed to take care of Denice and the child and to do the housekeeping. At the time appellant was 18 years old. Appellant and Terry would alternate, each working for four (4) days and then being off for four (4) days while the other took over. During their duty hours they were on duty 24 hours and lived on the premises.

Appellant commenced her employment on June 11, 1976, and worked until July 20, 1976, when Denice returned to the hospital for further treatment.

Appellant admitted that she began having an affair with Charles during the period she was employed by him to care for Denice and the child. She testified that after July 4, 1976, they had intercourse four times in the master bedroom of the Kraus home, the bedroom appellant was assigned for sleeping on the nights she worked. At that time Denice was sleeping in a hospital bed in the living room and Charles was supposed to be sleeping in a bunk bed in the daughter's bedroom; however, even before she and Charles started having an affair, he would on occasion join her in the master bedroom.

Denice and some of her witnesses testified that appellant encouraged Charles. Denice and her parents testified that appellant often wore nightgowns around the house or failed to wear underwear. Denice's mother testified that she drove by the Kraus home late one evening and saw appellant and Charles sitting in a lawn chair together smoking and drinking. She pulled into a neighbors' driveway and watched the couple for approximately four hours. The next morning she noticed that the single lawn chair was surrounded by beer cans.

On one occasion, appellant called Denice and asked her to tell Charles that she would have to miss a picnic that appellant and Charles had planned. Denice also testified that there were times when appellant would go outside with Charles and the child

1. Carole Kraus at the time of trial had remarried and was Carole Harness.

leaving her inside the house for long periods of time.

Terry Righter Sappington testified that from her first conversation with appellant she expressed an interest in Charles, and that later appellant told her that she, appellant and Charles, were sleeping together in the master bedroom.

Appellant admitted that Charles did not force his intentions on her. Even when he came to bed with her, she was free to leave and sleep in another part of the house. She chose not to do so. She claimed that she began to have intercourse with him in order to comfort him because he was unhappy. She admitted, however, that, at least at first, she enjoyed being pursued.

As the summer of 1976 progressed Charles became less interested in spending time with Denice, and she became suspicious that something was developing between Charles and appellant. Denice mentioned this to Terry.

After appellant's work at the Kraus home came to an end her parents sent her to the Washington, D.C. area to visit with an uncle and aunt there. During this time Charles and appellant corresponded and on one occasion Charles conversed with her on the telephone. On the first day she returned from this trip appellant met with Charles.

Appellant, having completed one year at Lindenwood College in St. Charles, Missouri, returned there in the Fall of 1976 for her sophomore year. In September, 1976, Charles left Denice and moved into an apartment near the Lindenwood College campus. Appellant and Charles had intercourse approximately twice a week from that time until Denice and Charles were divorced on February 14, 1977. While the divorce suit was pending Denice testified she tried unsuccessfully to achieve a reconciliation. Subsequently, on June 3, 1978, appellant and Charles were married. Later that same month Charles was seriously burned in a tractor accident and he expired

some short time thereafter from these injuries.

Charles was vice-president of Missouri Belting Company, president of Rubber Marketing Company, and the owner of a third company at the time of his death. He was earning approximately $70,000.00 a year. Appellant received approximately $50,000.00 in life insurance benefits and inherited a large part of his estate. She also was a plaintiff in a wrongful death action against International Harvester, Inc., the manufacturer of the tractor involved in the accident in which Charles was fatally injured, and in the settlement of that claim she received $736,000.00.[2]

Appellant initially contends the trial court erred in giving Instruction No. 6 to the jury in that it permitted the jury to find the issues in favor of the plaintiff without requiring the jury to find that defendant's acts caused the separation of plaintiff and her husband, Charles Kraus, and the subsequent dissolution of their marriage.

Instruction No. 6 submitted to the jury as respondent's verdict director reads as follows:

Your verdict must be for Plaintiff if you believe:

First, Plaintiff was married to Charles Kraus, and

Second, Defendant caused Plaintiff to lose the society, comfort, affection and assistance of Charles Kraus, and

Third, Defendant did so intentionally, and

Fourth, Plaintiff was thereby damaged, unless you believe Plaintiff is not entitled to recover by reason of Instruction (sic) Nos. 8 or 9.

This is a not-in-MAI instruction modelled after MAI 23.11 dealing with tortious interference with contract.

■ Appellant argues that Denice pleaded and tried her case on the theory that her losses were due to appellant having per-

---

**2.** The other plaintiffs in this action were Denice's child and Charles' daughter by his first marriage.

suaded Charles to leave her and therefore the submission of the verdict director which did not require a finding that she caused Charles to leave Denice was error requiring a new trial. We do not agree.

■ A verdict directing instruction is erroneous if it permits the jury to find for the plaintiff on a basis different from that pleaded and proved. *Koehler v. Burlington Northern, Inc.*, 573 S.W.2d 938, 943[2] (Mo.App.1978). However, instructions which fall within the fair implications of the pleadings are sufficient. *Clayton Brokerage Co. of St. Louis, Inc. v. Pilla*, 632 S.W.2d 300, 305[6] (Mo.App.1982). Denice's cause of action was clearly based on a claim that Carole had alienated Charles' affections and thereby caused Denice to sustain damages.

■ The Supreme Court of Missouri in *Gibson v. Frowein*, 400 S.W.2d 418, 421[3] (Mo. banc 1966) said: "Alienation of affections is an intentional tort and the elements of the cause of action are defendant's wrongful conduct, plaintiff's loss of the affections or consortium of his spouse and the causal connection between such conduct of defendant and the loss by plaintiff." In an action for alienation of affections a person is presumed to intend the natural and probable consequences of her voluntary acts. *id.* p. 421[5]. While the acts constituting the wrongful conduct on the part of the defendant must have been intentional, proof that the defendant had an actual intent to alienate the affections of plaintiff's spouse is not necessary if the acts and conduct of the defendant are inherently wrong and seductive and tend to and do have that effect. The foundation of a cause of action for alienation of affections is the loss of consortium. "This term (loss of consortium), when applied to alienation of affections includes the right of either spouse to the affection, society, assistance, companionship and conjugal fellowship of the other." *Farrow v. Roderique*, 224 S.W.2d 630, 635[8] (Mo.App. 1949).

There is no authority to the effect that in order to obtain a jury verdict in an alienation of affections case that plaintiff must prove that the defendant caused plaintiff's spouse to leave plaintiff or divorce her. In fact, the authorities have concluded otherwise. In *Gibson v. Frowein, supra,* the court reached a contrary result.

In *Gibson, supra,* plaintiff and her husband were still living together when the cause came on for trial. In *Farrow, supra,* the court held: "There can be a loss of consortium without the actual separation of the spouses and although they continue to occupy the same house, either may have a cause of action for alienation of affections against one who causes a loss of consortium." at p. 635[8]. Plaintiff has established a prima facie case when she had proved that the wrongful acts of the defendant intentionally done have caused the plaintiff to suffer a loss of consortium of her spouse.

■ The goal of MAI is to leave evidentiary detail to the argument of counsel and to submit only the ultimate issues for the jury's resolution by simple and concise instructions. The fact that Charles divorced Denice was evidence that he had lost affection for her; however, it was not an essential element of her cause of action. Nor was it made so because Denice incorporated allegations to that effect in paragraph 6 and 7 of her petition. Denice was required to prove only those allegations of her petition which were essential to establishing her cause of action and to make a case for the jury. Allegations which are unnecessary to the cause of action are to be treated as surplusage. *Comte v. Blessing*, 381 S.W.2d 780, 784[7] (Mo.1964); *McDowell v. Schuette*, 610 S.W.2d 29, 37[12] (Mo.App.1980).

■ We may reverse a case for instructional error only when we find that the instructions contain an error of substance with substantial potential for prejudicial effect. *Fowler v. Park Corporation*, 673

S.W.2d 749, 755[9] (Mo. banc 1984). Instruction No. 6 was a correct statement of the law. The damage instruction given—Instruction No. 10—was the required MAI 4.01. Therefore, we find no error, and most certainly, no error with substantial potential for prejudicial effect. We rule this point against appellant.

■ Appellant's next Point is that the trial court erred in refusing to admit evidence that Denice and Charles lived together for two years prior to their marriage and while both were married to other parties because such evidence was relevant to show the quality of their relationship, the affection that existed between them, and the amount of damage resulting from alienation by Carole of the affection Charles had for Denice.

Appellant cites no authority supporting her position. She relies on *Reynolds v. Jobes*, 565 S.W.2d 690 (Mo.App.1978). In *Reynolds* the court held that the trial court had not committed error in admitting evidence that plaintiff's husband had married her only because she was pregnant. This is not the same as holding that it would be error to refuse to admit the evidence. The trial court's refusal of the offered evidence was not error, and we so hold.

Appellant's final Point is that the jury verdict of $130,000.00 was so excessive as to require a new trial on all of the issues, because: (1) there was no evidence based on plaintiff's age, length of plaintiff's marriage, plaintiff's loss by reason of the dissolution of her marriage or permanent impairment of her earning ability, pain or suffering resulting from a wrong done her by defendant, to warrant such an amount; (2) the trial court committed error as set out in Points I and II; and (3) plain error of plaintiff's counsel in final argument urging the jury to compare an assumed value of defendant's marriage to Kraus to an asserted value of plaintiff's marriage to Kraus, thereby creating a bias and prejudice against the defendant which produced

the excessive verdict; or (4) in the alternative, if this jury's verdict is deemed merely excessive, but not resulting from jury bias and prejudice, a remittitur should be ordered based upon the actual monetary loss suffered by the plaintiff.

■ The amount of damages in a claim for alienation of affections is a question peculiarly within the province of the jury. The damages cannot from the very nature of things be estimated upon any mere compensatory or pecuniary basis. There is no scale whereby the damages can be graduated with certainty, and the courts do not interfere with verdicts in such cases except upon a showing of flagrant abuse of the power which the law has confided to the intelligence and good sense of the jury. The decisions show that the courts have almost universally declined to interfere with verdicts in such cases on the ground that they were excessive. *Hartpence v. Rodgers*, 143 Mo. 623, 45 S.W. 650, 654[8] (1898); *Morgan v. Ross*, 74 Mo. 318, 325 (1881); *Hayward v. Ham, et. ux.*, 59 S.W.2d 725, 731–732[5] (Mo.App.1933).

■ Any error which might have been occasioned by plaintiff's counsel in final argument cannot be reviewed by the court because appellant has failed to furnish us with a transcript of said argument.

We rule this Point against appellant and affirm.

SIMON, P.J., and STEPHAN, J., concur.