Thomas **MUCHISKY,**
Plaintiff–Appellant/Cross–Respondent,

v.

Stephen **KORNEGAY,**
Defendant–Respondent/Cross–Appellant.

No. 52071.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 3, 1987.

Motion for Rehearing and/or Transfer
Denied Dec. 10, 1987.

Cary J. Mogerman, Kyler L. Humphrey, David G. Dempsey, St. Louis, for plaintiff-appellant/cross-respondent.

Frank Susman, St. Louis, for defendant-respondent/cross-appellant.

REINHARD, Judge.

Both parties appeal following jury verdicts in favor of plaintiff on his claims of criminal conversation and alienation of affections and in favor of defendant on his libel and assault claims.[1] The appeals are consolidated here. We reverse the judgment on defendant's libel claim; we affirm the judgment on plaintiff's claims.

In Count I of his petition, plaintiff stated a claim for criminal conversation and, in Count II, for alienation of affections. In his counterclaim, defendant alleged invasion of privacy, libel, slander, assault, and prima facie tort. The evidence relevant to the parties' points on appeal was that plaintiff's wife and defendant were "life master" bridge players who met at a bridge game in March 1983. Beginning in the summer of 1983, defendant frequently drove plaintiff's wife to various locations where they played bridge. After the bridge games, they often would join other bridge players for "a social drink." During the first week in October 1983, defend-

---

1. Plaintiff appeals only from the judgment on    defendant's libel claim.

ant and plaintiff's wife, unaccompanied by other bridge players, went to a bar where they had drinks and discussed problems that plaintiff's wife was having with her marriage and similar problems defendant, unmarried at the time, had in his previous marriage. Defendant then drove her home. While in the car in the driveway, they talked and kissed. Two days later, after bridge, they went to a bar for a drink and then went to defendant's apartment where they engaged in sexual intercourse.

Later that month, while plaintiff was attempting to have intercourse with his wife, she began crying and finally told him that she loved defendant. She showed her husband a note she had received from defendant in which defendant stated,

.... I would give anything to have you in my arms.

When I'm with you, I know I have trouble expressing my feelings sometimes. But you mean more to me than anything else in the world right now, and I love you very, very much.

. . . .

I want you. I want you to be involved in my life like no one has ever been before. I will try my very hardest to make a good father.

. . . .

I love you; I don't want to share you. I want you to be mine the rest of my life. I can only hope that this dream of mine is also one that you share, because, if it is, we will make it together.

Plaintiff and his wife were divorced in December 1983; she then married defendant. Defendant admitted the relationship with plaintiff's wife and does not challenge the submissibility of plaintiff's case on either count.

Defendant's libel claim is based on two written communications by plaintiff. On one occasion, on an unspecified date, plain-

tiff wrote his wife a note in which he said, "Your boyfriend is a card cheat," and told her he planned to seek criminal charges against him for cheating at cards. The transcript reveals the following testimony from plaintiff concerning the note:

A. ... I think I wrote a note to her. I said, "Your boyfriend is a card cheat." And—

Q. And did you mention that you were going to bring criminal charges because of cheating in cards?

A. Yes. Yes, I threatened to do so. Obviously, I couldn't—

Q. Did you say that it was a crime?

A. Yes, I thought it was a crime.

In April 1984, plaintiff wrote his ex-wife's parents apparently stating to them that defendant had had intercourse with their daughter and that defendant's conduct was a crime in Missouri. Concerning the letter, plaintiff was asked:

Q. Do you recall saying in that letter that Steve had intercourse with Nancy, a married woman, and that was a crime against the laws of the State of Missouri?

A. I believe I did, but I don't recall for sure.

The case was submitted to the jury on both of plaintiff's claims and on defendant's libel and assault claims. The jury returned verdicts of $20,000 actual and $5,000 punitive damages on each of the four claims and the trial court entered judgment according to those verdicts.

Plaintiff's appeal concerns the libel award only; he does not challenge the judgment on the assault claim. In his sole point on appeal, plaintiff contends, in effect, that defendant did not make a submissible case on the libel claim.[2]

To determine whether or not a plaintiff has made a submissible case, the court

---

**2.** Defendant argues that plaintiff's oral motion for a directed verdict and his post-trial motion did not preserve this issue for our review. We disagree. At the close of all evidence, plaintiff moved for a directed verdict on defendant's five claims stating, "He didn't make a case." The court sustained the motion on all but the libel and assault counts. In a post-trial motion, plaintiff asked the trial court to set aside the

libel verdict "in accordance with his Motion for Directed Verdict...." Rule 72.01(a) requires a "motion for a directed verdict to state the specific grounds therefor," and Rule 72.01(b) permits a party to move for a judgment n.o.v. "in accordance with his motion for a directed verdict...." A motion for a directed verdict may be made orally. *Bank of Brookfield–Purden, N.A. v. Burns,* 724 S.W.2d 262, 265 (Mo.App.

presumes the plaintiff's evidence to be true and gives the plaintiff the benefit of all reasonable and favorable inferences that it can draw from the evidence. The evidence and inferences must establish every element of the claim and not leave any issue to speculation. *Grube v. Associated Dry Goods, Inc.,* 663 S.W.2d 310, 311 (Mo.App. 1983).

Defendant's basis for his libel claim, as submitted in his verdict directing instruction, is limited to the alleged imputation by plaintiff that defendant had committed a crime. The instruction states in pertinent part:

> Your verdict must be for defendant if you believe:
>
> ... plaintiff wrote and distributed letters to third persons containing statements that defendant was a card cheat and thus had committed a crime or that defendant had committed a crime by engaging in a sexual relationship with Nancy Kornegay at a time when she was married to plaintiff....

■ If a publication is libelous per se, a plaintiff need plead and prove only general damages. If the publication is libelous per quod, the plaintiff must specifically plead and prove special damages. *Mitchell v. St. Louis Business Journal,* 689 S.W.2d 389, 390 (Mo.App.1985). Defendant, in his counterclaim, did not specifically plead or prove special damages; therefore, if his claim is to survive, the publication must have been libelous per se.

■ Publication of a statement imputing or charging one with the commission of a crime, directly or indirectly, is libelous per se. *Mitchell,* 689 S.W.2d at 390. However, the statement must impute or charge conduct that is, in fact, a crime. *Id.* The adulterous relationship between defendant and plaintiff's wife was not a crime in Missouri; nor have we found a statute that would make card cheating, without proof of additional facts, a crime. Plaintiff's published statements accused defendant of illusory or imaginary crimes which cannot provide the basis for recovery on a libel per se theory, *see Mitchell,* 689 S.W.2d at 390, and, therefore, there was no actionable libel.

■ There is another reason why defendant's libel recovery should not stand. If an allegedly defamatory remark can be characterized as an opinion, it is subject to First Amendment absolute privilege. *Henry v. Halliburton,* 690 S.W.2d 775, 787 (Mo. banc 1985). The privilege is available to nonmedia defendants, *Id.* at 784, and is not limited to matters of political expression. *Id.* at 786. It is for the trial court to determine whether a statement is one of fact or opinion. *Id.* at 787. The *Henry* opinion provides guidance to assist a trial court in the difficult task of distinguishing assertions of fact from expressions of opinion. *Id.* at 787–790. In particular, *Henry* articulates a "totality of the circumstances" test that is "essential to determine whether an ordinary reader would have treated the statement as an opinion." *Id.* at 788. To assist in this determination, the court stated:

> For example, "[a]ny statement that may refer to criminal conduct must be examined in context in order to determine whether the reader would be left with the impression that plaintiff was being accused of a crime." ... Or the assertion may only suggest to the ordinary reader that the defendant disagrees with the plaintiff's conduct and used pejorative statements or vituperative language to indicate his or her disapproval.... Courts should also examine the statements themselves to determine whether they are too imprecise.

*Henry,* 690 S.W.2d at 788–89.

■ The evidence was that plaintiff admitted that he had written to his wife

---

1986). Although a motion for a directed verdict must state the basis with some particularity, courts apply a liberal construction to this rule, particularly if the defect which is the subject of the motion is apparent. *Gillenwaters Building Co. v. Lipscomb,* 482 S.W.2d 409, 411 (Mo.1972); *Frisella v. Reserve Life Insurance Co.,* 583 S.W.2d 728, 731 (Mo.App.1979). Here, plaintiff sought a directed verdict because "[Defendant] didn't make a case." The court then directed a verdict against defendant on three of his counts but refused to do so on the libel and assault counts. Although plaintiff's directed verdict motion is not one to be emulated, we believe the trial court was fully aware of plaintiff's position that there was no actionable libel.

that defendant was a card cheat and that was a crime, testifying that he "thought [card cheating] was a crime." He said he "believed" he wrote his ex-wife's parents that defendant had had sexual intercourse with their daughter and that was a crime in Missouri. Plaintiff thus accused defendant of committing what he erroneously perceived to be crimes. Moreover, there was evidence that the recipients of plaintiff's communications were aware of his highly agitated emotional state at the time. In light of the "totality of the circumstances" test in *Henry*, we believe an "ordinary reader" would have treated plaintiff's statements as opinion. The trial court erred in not directing a verdict for plaintiff on defendant's libel count.

Defendant, in his appeal, alleges:

The trial court erred in submitting to the jury two separate issues each of compensatory and punitive damages, where one of plaintiff's two theories against defendant included within it the elements of damage of the other theory, allowing plaintiff to recover double damages for the same injury.[3]

■ Based on our reading of the instructions submitted on plaintiff's two counts and the substantive law of Missouri regarding the torts of alienation of affections and criminal conversation, we conclude the trial court did not err. Initially, we note that defendant did not object to the instructions prior to submission to the jury. Nor does the record indicate he requested the trial court to caution the jury against double damages. Although contemporaneous objections to instructions are not required to preserve a claim of error, Rule 70.03, failure to challenge an instruction prior to submission may be considered by this court in determining whether a challenged instruction is prejudicial. *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682 (Mo. banc 1986).

Prejudice is judicially determined by examining whether the challenged instruction misdirected, misled, or confused the jury. *See Essex v. Getty Oil Co.*, 661 S.W.2d 544, 558 (Mo.App.1983). If a defect is not readily apparent to counsel preparing to argue the case, it is unlikely the jury will be confused or misled. *Cornell*, 712 S.W.2d at 682.

■ As a general principle of law, a party cannot be compensated twice for the same injury. *Ross v. Holton*, 640 S.W.2d 166, 173 (Mo.App.1982). However, alienation of affections and criminal conversation are separate torts and we believe the trial court did not err in submitting instructions and permitting recovery on each claim. The elements of the intentional tort of alienation of affections are the defendant's wrongful conduct, plaintiff's loss of the affections or consortium of his spouse, and the causal connection between the conduct of the defendant and the plaintiff's loss. *Gibson v. Frowein*, 400 S.W.2d 418, 421 (Mo. banc 1966). The term "consortium," as it is used in the context of an alienation of affections action, refers to the plaintiff's right to the affection, society, assistance, companionship, and conjugal fellowship of his spouse. *Kraus v. Kraus*, 693 S.W.2d 869, 873 (Mo.App.1985).

■ In a criminal conversation action, the only issue is whether the defendant was guilty of adultery with the spouse of the plaintiff. The tort is accomplished by the adultery itself, and damages are presumed because "the wrong is ... damage in and of itself." *Smith v. Whalen*, 613 S.W.2d 868, 870 (Mo.App.1981).

From a review of the elements of the torts, it is apparent that the alienation of a spouse's affections could result in the absence of adultery, and a criminal conversation claim could be stated even if an alienation of affections did not result from the sexual intercourse. The injuries are separate, and a plaintiff, upon sufficient proof, may be compensated for both. In a recent

---

3. Defendant's brief fails to comply with Rule 84.04(e) which provides in part: "If a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." By failing to comply, defendant has not properly presented the point for our review, and we could deny it on that basis alone. *See Sykes v. Bi-State Development Agency*, 716 S.W.2d 856, 859 (Mo.App.1986). Nevertheless, we will examine defendant's complaints.

similar case, the western district affirmed a jury verdict that awarded actual and punitive damages on each of plaintiff's alienation of affections and criminal conversation counts. *Bogart v. Jack*, 727 S.W.2d 447 (Mo.App.1987). *See also Rivers v. Rivers*, 292 S.C. 21, 354 S.E.2d 784 (App.1987).

Plaintiff's verdict directing instructions 8 and 14 set out the elements of the torts as stated in *Gibson v. Frowein* and *Smith v. Whalen.* Instruction 7 made clear that verdict director number 8 referred only to the alienation of affections count; instruction 13 informed the jury that verdict director 14 pertained only to the criminal conversation count. Plaintiff's counsel explained to the jury the differences in the causes of action and pointed out that there was a separate verdict form for each claim. We do not believe the instructions misdirected, misled, or confused the jury.

The judgment of the trial court on defendant's libel claim is reversed; the judgment on plaintiff's alienation of affections and criminal conversation claims is affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.