**Katherine Louise HELSEL,**
**Respondent,**

v.

**Sivi NOELLSCH, D.C., Appellant.**

No. SC 85053.

Supreme Court of Missouri,
En Banc.

June 17, 2003.

Dennis J. Owens, James W. McManus, Kansas City, for Appellant.

Craig D. Ritchie, St. Joseph, for Respondent.

RICHARD B. TEITELMAN, Judge.

Katherine and David Helsel divorced in January 2001. In March 2001, Helsel filed suit against Sivi Noellsch for alienation of affection, alleging that Noellsch intentionally interfered with the marriage and caused it to fail.[1] A jury returned a verdict in favor of Helsel. Noellsch filed post-trial motions in the trial court to abolish the tort of alienation of affection. The trial court declined. The issue before this Court is whether the common law tort of alienation of affection remains a viable cause of action in Missouri. Because alienation of affection is premised upon antiquated concepts, faulty assumptions, and is inconsistent with precedent, the tort is abolished in Missouri. The judgment is reversed.

### I. *History of the Tort*

In order to ensure pure bloodlines and discourage adultery, the early Germanic tribes provided that men were entitled to payment from the wife's lover so that the husband could purchase a new spouse. *Hoye v. Hoye,* 824 S.W.2d 422, 423–424 (Ky.1992); Bruce V. Nguyen, Note, *Hey, That's My Wife!—The Tort of Alienation of Affection in Missouri,* 68 Mo. L.Rev. 241, 243, 244 (2003). As successors to the Germanic tradition, the Anglo–Saxons also provided a cause of action for men to recover for another's interference with the marital relationship. The basis for this cause of action was that wives were viewed as valuable servants to their husband. *Id.* Later, early English common law established two causes of action, enticement and seduction, which are the precursors to the modern day torts of alienation of affection

---

1. In Missouri, a claim of alienation of affection requires proof that 1) the defendant engaged in wrongful conduct; 2) the plaintiff lost the affections or consortium of his or her spouse; and, 3) there was a causal connection between the defendant's conduct and the plaintiff's loss. *Gibson v. Frowein,* 400 S.W.2d 418, 421 (Mo.1966).

and criminal conversation. *Id;* W. PAGE KEETON, ET AL., PROSSER AND KEETON, THE LAW OF TORTS, § 124, at 917–918 (5th ed.1984). The purpose underlying both causes of action was to vindicate the husband's property rights in his wife. Prosser and Keeton, *supra,* at 917–918.

Beginning with New York in 1864, almost every state in this country eventually established a cause of action for alienation of affection in which men, but not women, could vindicate their rights in the marital relationship. Prosser and Keeton, *supra,* at 918. In the late nineteenth and early twentieth centuries, most states, including Missouri, acted to equalize the legal status of wives by allowing them to sue in their own names. Therefore, the original justification for the tort, that husbands had a property right in their wives, was undermined. *Hoye,* 824 S.W.2d at 424. Nonetheless, the tort persisted, but with a new rationale. Modern courts came to justify suits for alienation of affection as a means of preserving marriage and the family. *See Norton v. Macfarlane,* 818 p.2d 8, 12 (Utah 1991); *Thomas v. Siddiqui,* 869 S.W.2d 740, 743 (Mo. banc 1994) (Robertson, J., dissenting).

## II. *Abolition*

There are many persuasive reasons for abolishing the tort of alienation of affection. The tort is grounded in antiquated concepts of property interests in a spouse, is presently based upon the faulty assumption that it preserves marriages, and is inconsistent with this Court's decision in *Thomas v. Siddiqui,* wherein this Court abolished the closely related common law tort of criminal conversation.

## A. *Antiquated Property Concepts*

The original justification for the tort of alienation of affection lies in the antiquated concept that husbands had a proprietary interest in the person and services of their wives. Although modern courts no longer justify the tort of alienation of affection in these terms, the tort has remained fundamentally unchanged since its establishment in Missouri. The elements are the same. The defenses are the same. Because there has been no structural change to alienation of affection claims since its inception, the tort remains grounded in the property concepts that originally justified it. *Hoye,* 824 S.W.2d at 425, quoting, H. Clark, THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES, § 4.2, P. 267 (1987).

This idea "is perhaps better suited to an era that regarded one spouse as the property of another." *Hoye,* 824 S.W.2d at 425, quoting Prosser and Keeton, *supra,* at 917. It has no place in modern jurisprudence.[2]

## B. *Faulty Assumptions*

Even though the original property concepts remain inextricably bound to the tort, some still argue that suits for alienation of affection must be retained as a useful means of preserving marriages and protecting families. *See, Norton,* 818 P.2d at 12 (Utah 1991); *Thomas v. Siddiqui,* 869 S.W.2d at 743 (Mo. banc 1994) (Robertson, J., dissenting). While these are laudable goals, it is unlikely that suits for alienation of affection actually serve this purpose. *Thomas v. Siddiqui,* 869 S.W.2d at 742 (Price, J., concurring). To the contrary, the opposite is likely true. *Fundermann v. Mickelson,* 304 N.W.2d 790, 791 (Iowa 1981); Nguyen, *supra,* at 253.

---

**2.** *Cf. Breece v. Jett,* 556 S.W.2d 696, 707 (Mo. App.1977) (suggesting abolition of the common law tort of seduction because "actions of this kind have failed to accomplish their original social purpose and are considered by many jurisdictions to be socially unwise.").

First, suits for alienation of affection are almost exclusively brought after the marriage is either legally dissolved or irretrievably broken. Revenge, not reconciliation, is the often the primary motive. *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693, 697–698 (1986); 54 Am.Jur. Proof of Facts 3d *Proof of Alienation of Affections*, § 6 (1999).

Second, by filing suit, the plaintiff is publicly acknowledging the intimate details that led to the breakdown of the marriage. The necessarily adversarial positions taken in litigation over intensely personal and private matters does not serve as a useful means of preserving the marriage. *See Fundermann, supra,* at 791–792; Nguyen, *supra,* at 253.

## C. Consistency

In *Thomas v. Siddiqui,* this Court abolished the closely related common law tort of criminal conversation. The only difference between alienation of affection and criminal conversation is that criminal conversation requires proof of an adulterous sexual relationship. However, this difference in the elements of the torts does not provide a good basis distinguishing alienation of affection from criminal conversation because both torts simply represent different ways of interfering with the same relational interests. *Skaggs v. Stanton,* 532 S.W.2d 442, 443 (Ky.1975); Prosser and Keeton, at 919. Moreover, in reality, criminal conversation and alienation of affection are typically alleged concurrently as the conduct at issue almost always involves adultery. Prosser and Keeton, *supra,* at 917–918. If a spouse cannot recover because of an adulterous affair under a criminal conversation theory, a spouse

should likewise be barred from recovery by simply attaching the moniker of "alienation of affection" to the petition. Consistency demands that the tort of alienation of affection be abolished as was the tort of criminal conversation. *See, Thomas,* 869 S.W.2d at 742 (Price, J., concurring).

## III. Conclusion

When the reason for a rule of law disappears, so to should the rule. *Thomas,* 869 S.W.2d at 741; *State ex inf. Norman v. Ellis,* 28 S.W.2d 363, 368 (Mo.1930). The tort of alienation of affection can no longer be adequately justified. The original property concepts justifying the tort are inconsistent with modern law. The modern justification that the tort preserves marriages is a fiction. This Court has abolished the closely related common law tort of criminal conversation. *Thomas v. Siddiqui,* 869 S.W.2d at 742. As the tort of alienation of affection was created by the courts, it is within the province of the courts to abolish it. *See, Thomas v. Siddiqui,* 869 S.W.2d 740, 741 (Mo. banc 1994); *Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599, 605 (Mo.1969). The tort of alienation of affection is abolished in Missouri.[3]

The judgment is reversed.

WHITE, WOLFF, STITH and PRICE, JJ., concur.

BENTON, J., dissents in separate opinion filed.

LIMBAUGH, C.J., concurs in opinion of BENTON, J.

DUANE BENTON, Judge, dissenting.

The common law consistently compensates for interference with the marriage

---

**3.** This holding brings Missouri in line with the overwhelming majority of jurisdictions that have already abolished alienation of affection. Prior to this decision, thirty-four states have abolished the tort by statute and six have abolished it through the courts. Louisiana and Alaska never recognized the tort.

relation—"loss of consortium." Loss of consortium is the second of three elements in an alienation of affection claim. *Gibson v. Frowein*, 400 S.W.2d 418, 421 (Mo. banc 1966). "The foundation of a cause of action for alienation of affection is the loss of consortium." *Kraus v. Kraus*, 693 S.W.2d 869, 873 (Mo.App.1985).

In tort cases where a spouse is injured, the other spouse often has a separate claim for loss of consortium. *Powell v. American Motors Corp.*, 834 S.W.2d 184, 188 (Mo. banc 1992). Most of these losses are caused by a defendant's negligence. In alienation of affection—an intentional tort—a defendant's intentional conduct causes the loss. *See Gibson*, 400 S.W.2d at 421. It is inconsistent that the law compensates for negligent conduct causing a loss of consortium, but (after this opinion) does not compensate for intentional conduct causing the same loss.[1]

The Restatement (Second) of Torts classifies loss of consortium as an "Indirect Interference with Marriage Relation." *Restatement (Second) of Torts*, section 693, p. 495 (1977). The Restatement classifies alienation of affection as a "Direct Interference with Marriage Relation." *Restatement (Second) of Torts*, section 683, p. 478 (1977). It is inconsistent that the law compensates for indirect interference with the marriage relation, but (after this opinion) not for direct interference.[1]

The first reason the majority advances is the "antiquated property concepts" that originally justified alienation of affection. The original justification for loss of consortium was to compensate (only) a husband for his losses from an injury to his wife. *Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 543 (Mo. banc 1963). If the origin of a cause of action is decisive, consistency dictates abolishing loss of consortium claims.

The majority's second reason is "faulty assumptions." The majority expresses concern that suits for alienation of affection are brought after a marriage is dissolved or broken. This does not justify abolishing the tort, because claims for loss of consortium may be brought after the marriage relation ends. See *Bridges v. Van Enterprises*, 992 S.W.2d 322, 325 (Mo. App.1999); *Wyatt v. R.D. Werner Co., Inc.*, 524 N.W.2d 579, 580–81 (N.D.1994); *Restatement (Second) of Torts*, section 693, cmt. f, p. 497 (1977).

The majority intends to prevent public acknowledgment of the "intimate details" of the marriage and its breakdown. Again, this concern applies equally to loss of consortium claims.

The most common explanation for allowing recovery for loss of consortium by a spouse . . . is the impairment or destruction of the sexual life of a married couple by a tort-feasor as an element of damage in the spouse's consortium action. . . . [But] there are other elements,

---

**1.** I assume that the majority is also abolishing causes for "infliction of emotional distress" and "tortious interference with contract," where the facts support a claim for alienation of affection. See, e.g., *Hellmann v. Walsh*, 965 S.W.2d 198, 199–200 (Mo.App.1998); *Weicker v. Weicker*, 22 N.Y.2d 8, 290 N.Y.S.2d 732, 733–34, 237 N.E.2d 876 (1968); *Howton v. Avery*, 511 So.2d 173, 174 (Ala.1987); *Weaver v. Union Carbide Corp.*, 180 W.Va. 556, 378 S.E.2d 105, 109 (W.V.1989); *Wilson v. Still*, 819 P.2d 714, 716 (Okla.1991); *Koestler v. Pollard*, 162 Wis.2d 797, 471 N.W.2d 7, 11 (1991); *Speer v. Dealy*, 242 Neb. 542, 495 N.W.2d 911, 913–15 (1993); *Cherepski v. Walker*, 323 Ark. 43, 913 S.W.2d 761, 767 (1996); *Lotring v. Philbrook*, 701 A.2d 1034 (R.I.1997); *Strock v. Pressnell*, 38 Ohio St.3d 207, 527 N.E.2d 1235, 1242 (1998); *Doe v. Doe*, 358 Md. 113, 747 A.2d 617, 623–24 (2000); *McDermott v. Reynolds*, 260 Va. 98, 530 S.E.2d 902, 903–04 (2000).

such as love, affection, care and companionship....

*Powell,* 834 S.W.2d at 188.

The third reason advanced to abolish alienation of affection is "consistency" with abolition of the tort of criminal conversation nine years ago in *Thomas v. Siddiqui,* 869 S.W.2d 740 (Mo. banc 1994). To the contrary, a rationale for abolishing criminal conversation was that the tort of alienation of affection would still compensate for interference with the marriage relation. *Id.* at 741.

The *Thomas* case recognized that—contrary to the majority's assertion—there is a difference between the torts. Criminal conversation had only two elements: 1) an actual marriage, and 2) defendant had sexual intercourse with plaintiff's spouse. *Id.* at 741. The only defense to criminal conversation was consent by the plaintiff. *Id.* Damages were presumed. *Muchisky v. Kornegay,* 741 S.W.2d 43, 47 (Mo.App. 1987).

Alienation of affection has three elements: 1) defendant's wrongful conduct; 2) plaintiff's loss of consortium; and, 3) a causal connection between defendant's conduct and plaintiff's loss. *Gibson,* 400 S.W.2d at 421. There are various defenses to alienation of affection, including causation, and the lack of wrongful conduct. See *Comte v. Blessing,* 381 S.W.2d 780, 782, 783–84, 786–87 (Mo.1964); *Thornburg v. Federal Express Corp.,* 62 S.W.3d 421, 426 (Mo.App.2001). Damages must be proved. *Kraus,* 693 S.W.2d at 874.

In sum, the majority applies consistency at the level of whether the torts protect "the same relational interests." At this level, today's opinion calls into question claims for loss of consortium, which also protect marriage relational interests.

I would continue to recognize the tort of alienation of affection, like seven other states—Illinois, Hawaii, Mississippi, New Mexico, North Carolina, South Dakota, and Utah. See *Veeder v. Kennedy,* 589 N.W.2d 610, 614 n. 6 (S.D.1999). True, six states have previously abolished alienation of affection by judicial decision. See *Thomas,* 869 S.W.2d at 744 n. 3; *Hoye v. Hoye,* 824 S.W.2d 422 (Ky.1992). However, three Supreme Courts—having abolished criminal conversation—recently refused to abolish alienation of affection. *Bland v. Hill,* 735 So.2d 414 (Miss.1999); *Veeder v. Kennedy,* 589 N.W.2d 610 (S.D. 1999); *Norton v. Macfarlane,* 818 P.2d 8 (Utah 1991).

Because I would leave further action to the General Assembly, I dissent.