The KIESEL COMPANY,
Plaintiff/Respondent,

v.

J & B PROPERTIES, INC, et al.,
Defendants/Appellants.

No. ED 89002.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 2, 2008.

Michael A. Gross, Robert Herman, co-counsel, St. Louis, MO, for appellant.

Richard Evan Greenberg, Jacqueline Louise Blocker, co-counsel, St. Louis, MO, for respondent.

BOOKER T. SHAW, Judge.

J & B Properties, Inc. (J & B), Glasgow Enterprises, Inc. (Enterprises), Glasgow Realty, LLC (Realty), and their owner William Glasgow (collectively Appellants) appeal the trial court's denial of their motions for judgment notwithstanding the verdict (JNOV) and the court's entry of judgment on the jury's verdict in favor of The Kiesel Company (Respondent) on its breach of contract claim. Appellants assert that the trial court erred because Respondent failed to make a submissible case that Enterprises and Realty were parties to the contract, and, in the absence of those defendants, the jury's verdict as to the remaining defendants is insufficient. We affirm in part and reverse in part.

## I. Facts and Procedural History

Mr. Glasgow is the sole owner of J & B, Enterprises, and Realty. All three companies are in the business of buying and selling real estate. Respondent is in the environmental clean-up business. In December 2002, Enterprises purchased a defunct gas station at a St. Louis County tax sale. In January 2003, at the advice of Appellants' accountant, Enterprises conveyed the property by quitclaim deed to Realty. Shortly thereafter, Respondent's executive vice president, Larry Gooden, received a call from Patrick McQuay, a contractor who performs significant work for Appellants. McQuay said that he was "with Glasgow" and that J & B had purchased a property requiring an environmental assessment. Respondent performed the assessment, invoiced J & B, and received payment from Realty. McQuay then requested a bid for the remediation work (i.e., clean-up) indicated in the assessment. Respondent submitted to J & B, care of Mr. Glasgow, a proposal dated February 14, 2003, containing an estimate that can be summarized as follows:

- $18,570 for excavation and removal of five tanks and piping,
- Collection and removal of tank contents at $35 per drum and $175 per drum disposal, plus $1 per gallon pumped,
- $10,000 insurance deductible for the remediation of contaminated soil and groundwater, the remainder to be re-

imbursed by the Missouri Petroleum Storage Tank Insurance Fund (PSTIF),

- $2000–4000 for clean-up of the interior of the structure on the property.

McQuay contacted Respondent's operations manager, Robert Kiesel, and instructed him to proceed. Respondent performed the work in February and March 2004 and submitted to J & B an itemized invoice, dated March 31, in the amount of $80,476.24, of which $55,595.24 was for soil remediation. With Respondent's assistance, Glasgow submitted to the PSTIF a claim form dated June 15 naming J & B as owner of the property and seeking reimbursement of the soil remediation cost. The Secretary of State promptly issued to Respondent's address a check for $45,595.24 (after the $10,000 deductible) payable to J & B and Respondent jointly. McQuay used Glasgow's signature stamp to endorse the check and deposited it into J & B's bank account without Respondent's endorsement. Respondent sent J & B invoice reminders in May, July, and August 2004. In October, Glasgow replied in a letter, printed on J & B letterhead, in which he acknowledged receipt and deposit of the PSTIF check and essentially refused to pay Respondent's invoice because it was more than he expected.

Respondent filed suit against all Appellants alleging breach of contract and other counts that have since been dismissed or abandoned.[1] The jury found in favor of Respondent against all four Appellants and awarded damages of $105,476.24. Upon Appellants' motion for remittitur, Respondent agreed to a reduction of $25,000. Appellants also moved for judgment notwithstanding the verdict (JNOV). The trial court denied those motions and entered judgment for $80,496 plus interest, costs, and attorney fees.

In their first and second points, Appellants assert that the trial court erred by denying their motions for JNOV as to Realty and Enterprises essentially because neither entity was in privity of contract with Respondent. In their third point, Appellants contend that the court erred by entering judgment on the jury's verdict because the jury might have assessed damages differently in the absence of defendants Realty and Enterprises.

## II. Discussion

*Enforceability of the Contract Against Enterprises and Realty (Points I–II)*

■ When reviewing a trial court's denial of a motion for JNOV, an appellate court examines whether, viewing the evidence and inferences in the light most favorable to the plaintiff, the plaintiff made a submissible case by presenting substantial evidence for every fact essential to liability. *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 338 (Mo.App. E.D.2000). Whether evidence in a case is substantial and whether inferences drawn are reasonable are questions of law. *Id.*

■ In order to make a submissible case for breach of contract, a plaintiff must first establish that a contract existed between the parties. *McClain v. Papka*, 108 S.W.3d 48, 53, (Mo.App. E.D.2003). Appellants maintain that Realty and Enterprises were not parties to the agreement. All communication and documentation identified J & B as the recipient of Respondent's services.

---

1. Respondent's second amended petition asserted breach of contract, suit on account, unjust enrichment, and fraud. The trial court sustained Appellants' motions for directed verdict on the fraud count, and, of the remaining counts, Respondent chose to submit to the jury only the breach of contract claim.

Respondent points to three facts supporting the jury's finding that Realty and Enterprises were parties to the agreement. First, Mr. McQuay was an agent for all Appellants and did not distinguish between entities when he contacted Mr. Kiesel to authorize the work. But the record shows that McQuay approached Respondent specifically on behalf of J & B to request the initial assessment in January 2003. As such, Respondent reasonably understood that J & B would be the recipient of the clean-up services recommended in the assessment, and Appellants failed to correct Respondent's understanding when they received its written proposal naming J & B as the customer.

Second, Respondent notes, Enterprises and Realty successively owned the property on which the work was performed, so the jury could have inferred that McQuay was acting on their behalf, too. But, again, McQuay represented to Respondent that J & B owned the property, and nothing in the record indicates that McQuay even knew Enterprises or Realty to be the true owner. Mr. Glasgow signed forms that Respondent prepared and submitted to the Missouri PSTIF naming J & B as the owner. If anything, Realty could have been a third-party beneficiary of the agreement. Such a status confers a right to sue a breaching party in some circumstances,[2] but Appellant offers, and we have found, no authority permitting suit *against* a beneficiary for breach of a contract to which it was not a party. Respondent cites *Marro v. Daniels*, 914 S.W.2d 16 (Mo.App. E.D.1995), where a landlord was able to recover rents from the original lessee's sister company, who took possession of the property after expiration of the lease, but with whom the landlord had no written agreement. *Marro* is inapposite

because it involved an implied contract where no current written agreement existed with another party. The court there found that the defendant's conduct exhibited a mutual understanding. Here, by contrast, there is no conduct on the part of Realty or Enterprises from which to infer any understanding, much less an implied contract, particularly when a writing on the same subject names another entity.

Third, Respondent posits that, because McQuay and Glasgow led Respondent to believe that it was contracting with the actual owner of the property, the actual owner should be liable. We reject the notion that a principal can be bound unwittingly by a contract that its agent enters sloppily on behalf of a different principal. Respondent emphasizes that Glasgow owned all three entities, neglected corporate formalities, and transferred assets among them freely. Respondent seems to advocate for piercing the corporate veil but rightly stops short, as that doctrine generally serves to reach shareholders, not horizontal affiliates, in cases involving fraud. (See generally 18 Am.Jur.2d Corporations 47. Regarding sister companies, see *Collet v. American Nat. Stores, Inc.*, 708 S.W.2d 273 (Mo.App. E.D.1986).) Here, Respondent's fraud claim was dismissed by directed verdict, thus eliminating an essential element for veil-piercing. Moreover, Respondent has already reached the shareholder, Mr. Glasgow, via J & B.

In the absence of any evidence that Enterprises or Realty assented to the terms of Respondent's proposal, the jury's inference that these entities were bound by or breached the contract was unreasonable. Points I and II are granted.

*Entry of Judgment on the Jury's Verdict*

 During its deliberations, the jury asked whether it had "any latitude" with

---

**2.** We do not opine as to whether the agreement conferred such status upon Realty but

note that, as a general rule, the contract must express some intent to that effect.

respect to damages. In response, the trial court simply referred the jury to the evidence and instructions. Ultimately, the jury assessed damages of $105,476.24 against all four Appellants collectively. Upon Appellants' motion for remittitur, Respondent agreed to a reduction of $25,000, and the trial court entered a final judgment of $80,496, which closely approximates the amount sought in Respondent's petition. Despite the amended judgment entered on their own motion, Appellants now seek a new trial on the issue of damages, asserting that the trial court erred in first entering judgment on the jury's verdict because it was greater than Respondent's claim and requires speculation as to what amount the jury might have assessed against J & B and Mr. Glasgow as the only proper defendants.

■ As a procedural matter, Appellants attempt to appeal a judgment that was superseded by an amended final judgment entered at their request. The initial judgment from which Appellants appeal no longer exists, and the subsequent final judgment results from Appellants' own trial strategy. Appellants filed a motion for remittitur *or alternatively* a new trial. Respondent agreed to the former, thereby precluding Appellants from seeking the latter. "By accepting the remittitur, plaintiff obtains a judgment he otherwise would not hold [and] deprives defendant of a new trial ..." *Carver v. Missouri–Kansas–Texas R. Co.,* 362 Mo. 897, 245 S.W.2d 96, 105 (1952).

■ On substance, an appellate court "will not disturb a trial court's entry of judgment on a jury verdict unless there is an abuse of discretion either by the trial court or by the jury." *Ince v. Money's Bldg. & Development, Inc.,* 135 S.W.3d 475, 478 (Mo.App. E.D.2004). "The trial court has broad discretion in ordering remittitur, and its decision whether or not to reduce damages will not be disturbed on appeal absent an abuse of discretion so grossly excessive that it shocks the conscience and convinces this court that both the trial judge and the jury have abused their discretion." *Reese v. Brooks,* 43 S.W.3d 415, 420 (Mo.App. E.D.2001). We find no abuse of discretion in the trial court's order assessing damages in almost the exact amount invoiced to the very defendants to whom Respondent submitted its proposal.

*Attorney Fees*

■ Lastly, Respondent asks this court to award it $22,100 in attorney fees incurred to defend this appeal. In support of its motion, Respondent points to Appellants' deliberate misconduct in keeping the PSTIF reimbursement check and to Appellants' $180,000 profit from the resale of the property following Respondent's clean-up work. Respondent also notes that the trial court saw fit to award interest and attorney fees pursuant to section 431.180, which provides a statutory basis for an award to the prevailing party in actions for payment for construction work.

■ The American Rule generally requires litigants to bear the expense of their own attorney fees; one exception is where a statute allows a party to recover those fees. *Williams v. Finance Plaza, Inc.,* 78 S.W.3d 175, 184 (Mo.App. W.D. 2002). Though this court found merit in Appellants' challenge to identify the proper entity responsible for the debt to Respondent, we found no merit whatsoever in Appellant's challenge to the existence of that debt. Appellants turned a sizeable profit on the property as a result of the clean-up, while Respondent carried a significant account receivable, incurred considerable costs to collect on its services, and even remitted the verdict excess that would have paid for the defense of this

appeal. Exercising the discretion conferred upon the court by section 431.180, we grant Respondent's motion for attorney fees.

### III. Conclusion

The court reverses the judgment as to Realty and Enterprises, affirms the judgment against the remaining defendants, William Glasgow and J & B Properties, and awards attorney fees to Respondent in the amount of $22,100.

LAWRENCE E. MOONEY, P.J., and NANNETTE A. BAKER, J., concur.