**John JOHNSON, Respondent,**

v.

**ALLSTATE INDEMNITY COMPANY, Appellant.**

**No. ED 90476.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 17, 2009.

Chris Lange, Michael S. Hamlin, St. Louis, Curtis E. Woods, Kansas City, MO, for Appellant.

Michael T. Pivac, Thomas H. Hearne, Springfield, David L. Steelman, Rolla, MO, for Respondent.

## OPINION

GEORGE W. DRAPER III, Judge.

Allstate Indemnity Company (hereinafter, "Allstate") appeals from the trial court's judgment after a jury returned a verdict in favor of John Johnson (hereinafter, "Johnson") on his claim of defamation for statements Allstate made in its letter denying Johnson's claim for a loss after his home was destroyed by a fire. Allstate raises five points on appeal challenging the sufficiency of the evidence to support: (1) the jury's verdict; (2) the jury's award of actual damages in the amount of $900,000; and (3) the jury's award of $100,000 in

punitive damages. Allstate also claims the trial court abused its discretion in denying its motion for remittitur and leave to amend its answer to include additional affirmative defenses. We affirm.

Johnson purchased his grandfather's home in Salem, Missouri, (hereinafter, "the property") in 1999. Johnson contacted Allstate to obtain insurance on the property. An Allstate agent took Johnson's application over the phone, and Allstate issued Johnson a homeowner's insurance policy. The property was destroyed by fire on July 9, 2002. Johnson filed a claim with Allstate under the terms of the insurance policy. After receiving Johnson's claim, Allstate conducted an investigation under the supervision of Michael Peterson (hereinafter, "Peterson"), a claims service adjuster who worked in Allstate's special investigations unit.

At the conclusion of Allstate's investigation, Peterson prepared and sent Johnson a denial letter on February 18, 2003. Peterson and Allstate approved all of the language and statements made in the letter. Allstate included several reasons for its denial, two of which are pertinent to this appeal:

2. The investigation into the facts and circumstances surrounding your claim has led to a reasonable belief and conclusion that you intentionally concealed and/or misrepresented material facts or circumstances concerning your resi-

dence, your activities on the date of the loss, the cause of the loss, and the amount, type and value of the property allegedly damaged or destroyed.

3. The investigation into the facts and circumstances surrounding your claim has led to a reasonable belief and conclusion that you engaged in fraudulent conduct and/or made false statements in this investigation, at your examination under oath and otherwise, concerning this insurance, your property and your claim.

After receiving this letter, Johnson filed a breach of contract claim and vexatious refusal to pay claim against Allstate on April 23, 2003. The case was removed to federal court based upon diversity jurisdiction.[1]

While the federal case was pending, Johnson filed a one count petition for defamation against Allstate and Peterson on February 23, 2004, in the Circuit Court of the City of St. Louis. Johnson alleged Allstate and Peterson wrote and delivered the denial letter which contained defamatory statements, and listed the two statements set forth *supra*. Johnson claimed he published and disclosed the matters contained in the denial letter to insurance agents in the process of attempting to obtain insurance. Johnson stated he suffered actual damages in that "he has not been able to obtain insurance and has been

---

1. Allstate filed a counterclaim for declaratory judgment. In its counterclaim, Allstate set forth the pertinent parts of the denial letter, and requested the federal court declare the rights of the parties under the insurance policy. Specifically, Allstate asked the federal court to determine that Johnson did not have coverage by way of his fraudulent conduct, misrepresentation, and concealment with respect to his claim. The federal case went to trial in September 2004. The jury returned its verdict in Johnson's favor, assessing damages in the amount of $81,000 for the dwell-

ing, personal property, and additional living expenses. The jury declined to assess interest, penalties, or attorney fees against Allstate. The federal court later denied Allstate's counterclaim in a memorandum opinion on December 28, 2004. The court specifically noted the jury had "rejected [Johnson's] claim for vexatious refusal to pay and did not award any amounts for interest, penalties, or attorneys' fees. By awarding [Johnson] an amount under the policy, the jury rejected [Allstate's] asserted defenses based upon fraud and misrepresentation."

deprived of insurance associations and business relationships; further, as a direct result of said statements he has been and will in the future be caused to suffer humiliation, embarrassment, hurt, mental anguish, pain and suffering and has and will in the future be deprived of insurance business associations." Johnson also requested punitive damages.

Following extensive discovery, amended pleadings, a motion for summary judgment, and Peterson's voluntary dismissal as a party prior to trial, the case went to trial on July 30, 2007. The jury rendered its verdict in Johnson's favor on his defamation claim and awarded him $900,000 in actual damages and $100,000 in punitive damages. Allstate filed a motion for judgment notwithstanding the verdict (hereinafter, "JNOV") which was denied. Allstate now appeals. The specific evidence adduced at trial will be set forth in our analysis as needed to avoid repetition.

In Allstate's first point, it argues the trial court erred in denying its JNOV motion because Johnson failed to present sufficient evidence Allstate was negligent in making the defamatory statements against him in the denial letter. Allstate argues it made the statements after a fair and thorough investigation, and therefore, Johnson failed to make a submissible case for defamation.

Before reaching the merits of Allstate's argument, we must determine whether this issue is preserved for appellate review. Johnson argues this point is not preserved for appeal because Allstate's oral motion for directed verdict did not challenge this evidence, and any discussion in Allstate's subsequent JNOV motion did not cure this defect. Allstate contends it has properly preserved all of its points for appeal.

We find *Pope v. Pope*, 179 S.W.3d 442 (Mo.App. W.D.2005) instructive on this is-

sue. In *Pope*, the Western District succinctly set forth the steps a party must take to preserve issues for appellate review:

> To preserve the question of submissibility for appellate review in a jury-tried case, a motion for directed verdict must be filed at the close of all the evidence and, in the event of an adverse verdict, an after-trial motion for a new trial or to set aside a verdict must assign as error the trial court's failure to have directed such a verdict. Failure to move for a directed verdict at the close of all the evidence waives any contention that plaintiff failed to prove a submissible case. Similarly, a motion for directed verdict that does not comply with the requirements of Rule 72.01(a) neither presents a basis for relief in the trial court nor preserves the issue in the appellate court.

*Pope*, 179 S.W.3d at 451 (*quoting Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 163 (Mo.App. W.D. banc 1997)(internal citations omitted)). Rule 72.01 governs motions for directed verdict and judgment not withstanding the verdict. Rule 72.01(a) mandates a motion for directed verdict "shall state the specific grounds" it relies upon.

Allstate relies on *Muchisky v. Kornegay*, 741 S.W.2d 43 (Mo.App. E.D.1987) and *Frisella v. Reserve Life Ins. Co. of Dallas, Tx.*, 583 S.W.2d 728 (Mo.App. E.D. 1979), among others, to support its contention that its oral motion for directed verdict was sufficient. Allstate alleges its motion for directed verdict should be construed liberally because its basis was apparent and the trial court was aware of its position at trial.

The *Pope* court explicitly rejected this liberal construction argument, and more importantly, rejected the holdings in *Mu-*

*chisky* and *Frisella* because they relied upon *Gillenwaters Building Co. v. Lipscomb,* 482 S.W.2d 409 (Mo.1972). In the *Gillenwaters* decision, the Missouri Supreme Court did not discuss or mention Rule 72.01, which was worded differently when that case was decided than it is today. The *Pope* court reasoned that "at the time *Gillenwaters* was decided, Rule 72.01 did not provide, as it does now (and has since January 1, 1975), that: A motion for directed verdict shall state the specific grounds therefore." *Pope,* 179 S.W.3d at 455. The *Pope* court went on to explain:

> Therefore, *Gillenwaters* is no longer good law on the requirements of Rule 72.01, and has not been good law on that subject since the amended Rule 72.01 took effect on January 1, 1975. Likewise, *Gillenwaters'* progeny, three cases all decided by the Eastern District of this court, is also bad law when it comes to Rule 72.01(a), because in each of those cases, the court relied on *Gillenwaters* without properly taking into account the subsequent changes in Rule 72.01, which effectively eliminated whatever liberality might previously have been applied to after-trial motions for judgment. *See Frisella,* 583 S.W.2d at 731–32; *Muchisky,* 741 S.W.2d at 45 n. 2; *Baldridge [v. Lacks],* 883 S.W.2d [947] 953 [(Mo.App. E.D.1994)]. Moreover, in deciding those cases, the Eastern District did not mention its previous decision in *Quality Dairy Co. v. Openlander,* 456 S.W.2d 608 (Mo.App. E.D. 1970), where the defendant's motion for directed verdict "stated only generally that 'plaintiffs have failed to make a submissible case.'" *Id.* at 609. The court held that the motion gave "neither the trial court, opposing counsel, nor this court the specific grounds necessary to preserve this point for review." *Id.*

*Pope,* 179 S.W.3d at 455–56.

The entirety of Allstate's oral motion for directed verdict at the close of Johnson's evidence was as follows:

> The motion for a directed verdict at the close of [Johnson's] evidence and the close of all evidence is the same in that they haven't—there's no substantial or competent evidence to prove [Johnson] has been damaged, and that means actual damages. The damages they're alleging that he suffered have been presented to the jury based on pure speculation and conjecture and not supported by the evidence. There's no evidence of actual damages to [Johnson's] reputation. And, additionally, [Johnson] admitted that his statement in the examination under oath was not true, which means they did not make a submissible case. At least that's to paragraph 3 of the [denial letter]. And for those reasons I request a verdict be directed in favor of [Allstate] against [Johnson] at the close of [Johnson's] evidence and all evidence.

The court overruled Allstate's oral motion, finding Johnson made a submissible case. When reviewing Allstate's oral motion for directed verdict, it is clear Allstate did not challenge the sufficiency of the evidence based upon Johnson's failure to prove Allstate had the requisite degree of fault because it did not conduct a fair and thorough investigation. Allstate focused its argument on the damages issue and its defense that the statements contained in the denial letter were true. Thus, the argument Allstate raises in this first point is not preserved for appeal because it was not raised as a specific ground pursuant to Rule 72.01(a).

Allstate also argues its motion for JNOV makes it clear that it is challenging Johnson's failure to make a submissible case because he failed to prove the requisite degree of fault. Allstate's JNOV motion argued Johnson failed to submit sufficient

evidence of actual damages to support his defamation claim. The motion charges the trial court with error for failing to grant its motion for directed verdict, stating, "[Allstate's] Motions for Directed Verdict were premised upon the fact that the evidence failed to establish the requisite elements of a defamation cause of action. Specifically, [Johnson] failed to prove, by way of any competent or credible testimony or evidence, that he had in fact sustained any damage." Moreover, Allstate's motion for JNOV explicitly states the trial court erred in allowing Johnson to question Peterson with respect to the adequacy of Allstate's underlying investigation.

■ The defendant in *Pope* raised this argument as well, stating that even if his motion for directed verdict was deficient, the specific allegations contained in its JNOV motion cured any defect. The *Pope* court rejected this contention, stating, "[A] defendant's failure to file a motion for directed verdict which states the specific grounds therefore not only precludes the defendant from obtaining judgment notwithstanding the verdict in its favor, but also further precludes it from obtaining appellate review of the trial court's failure to enter judgment notwithstanding the verdict." *Id.*, (*quoting Hatch v. V.P. Fair Found., Inc.*, 990 S.W.2d 126, 137–38 (Mo. App. E.D.1999)(quotations omitted)). Thus, in applying the *Pope* rationale, we find this point has not been preserved for appeal.

■ Similarly, we find Allstate's fourth point, challenging the submission of the issue of punitive damages to the jury, is likewise not preserved for appeal. Allstate requested and received a bifurcated trial. The jury was asked to determine liability with respect to actual and punitive damages in the first phase of the trial in the verdict director. Allstate did not request a directed verdict based upon John-

son's failure to make a submissible case for punitive damages prior to the issue being submitted to the jury. Moreover, Allstate did not lodge any objection to the verdict director's inclusion of the question of liability for punitive damages based upon Johnson's failure to present a submissible case. Any discussion in Allstate's motion for JNOV was insufficient to cure this defect per the holding in *Pope*.

■ We may review errors at our discretion that have not been raised or preserved for plain error if they affect substantial rights, resulting in manifest injustice or a miscarriage of justice. Rule 84.13(c). On its face, plain error is error that is evident, obvious, and clear. *CADCO, Inc. v. Fleetwood Enterprises, Inc.*, 220 S.W.3d 426, 433 (Mo.App. E.D. 2007). However, appellate courts seldom grant plain error review in civil cases. *Goralnik v. United Fire and Cas. Co.*, 240 S.W.3d 203, 210 (Mo.App. E.D.2007). Since Allstate did not request plain error review should we find any of its points unpreserved, and seeing no error that is evident, obvious, and clear resulting in manifest injustice or a miscarriage of justice, we decline to exercise our discretion to do so. *See Pope*, 179 S.W.3d at 460.

Allstate's second point claims the trial court erred in denying its JNOV motion because Johnson failed to prove each element of his defamation claim. Specifically, Allstate argues Johnson did not present substantial and competent evidence that he suffered actual damages. We find this point was preserved in that both the oral motion for directed verdict and Allstate's motion for JNOV specifically challenged Johnson's alleged failure to prove he suffered damages as a result of the defamatory statements contained within the denial letter.

■ Upon review of the trial court's denial of a motion for directed verdict or JNOV, we must determine whether Johnson made a submissible case. *Brown v. Bailey*, 210 S.W.3d 397, 404 (Mo.App. E.D. 2006). "To make a submissible case, a plaintiff must present substantial evidence for every fact essential to liability. Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 520–21 (Mo.App. W.D.2007)(*quoting Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 472 (Mo.App. W.D.2005)). We take the evidence in the light most favorable to the verdict, giving the prevailing party all reasonable inferences from the verdict and disregarding the unfavorable evidence. *Hodges v. City of St. Louis*, 217 S.W.3d 278, 280 (Mo. banc 2007). "A jury verdict will not be overturned unless there is a complete absence of probative facts to support the verdict." *Martha's Hands, LLC v. Starrs*, 208 S.W.3d 309, 314 (Mo.App. E.D.2006).

■ To prove defamation, Johnson had the burden of proving: "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." *State ex rel. BP Products North America Inc. v. Ross*, 163 S.W.3d 922, 929 (Mo. banc 2005)(*quoting Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000)). "Proof of actual reputational harm is an absolute prerequisite in a defamation action." *Kenney v. Wal–Mart Stores, Inc.*, 100 S.W.3d 809, 817 (Mo. banc 2003). Allstate's point focuses on Johnson's failure to prove actual damages. Therefore, we will discuss only that contested element of the defamation claim.

■ Viewing the evidence in the light most favorable to the verdict and disregarding contrary evidence, we find the jury was presented with ample evidence to support an award of actual damages based upon the reputational damage Johnson suffered as a result of the defamatory statements contained in the denial letter. Johnson testified at trial that after Allstate denied his claim, he attempted to obtain insurance for his father's house, which he inherited after his father died, and on two trailers that were located on the Salem property. Johnson said he began calling insurance agents he found in the telephone book. Johnson testified he met with five insurance agents, showed them the denial letter, and all five agents told him they could not insure him because of the allegations contained in the letter. After these attempts, Johnson stated he currently had no insurance on his home, his personal property, or on any of the contents, valuables, and keepsakes. Johnson stated this was "something [he worries] about every day." Johnson further testified he was embarrassed to hand someone a letter that accused him of committing insurance fraud.

Coupled with Johnson's testimony about his attempts to gain insurance on his father's home, three insurance agent depositions were read into the record during trial. While two of the agents did not have a specific recollection of meeting Johnson or reading the denial letter, they gave their assessment as to whether Johnson could obtain insurance in light of the allegations of insurance fraud contained therein.

Loretta Phelps (hereinafter, "Phelps") testified that a determination by a prior insurance company that the applicant had committed fraud in a fire claim would tend to deprive the applicant of insurance contracts and associations. Based upon All-

state's letter, Phelps concluded, "[I]t would be hard to find a company that would cover [Johnson]." Mark Miller echoed Phelps' testimony, adding, "If given this [denial letter], it's fair for me to say that I don't think we had any markets at that time that we could have even considered" to provide Johnson coverage. Steven Staniszewski (hereinafter, "Staniszewski"), a personal friend and insurance agent, also testified he spoke to Johnson about obtaining homeowners insurance after the fire loss. Johnson showed him the letter from Allstate. Staniszewski stated the allegations of fraud would disqualify Johnson from obtaining insurance. Moreover, Staniszewski stated a person accused of fraud is not going to get insurance and the allegation is "going to stay with him too. It's just going to keep going."

Finally, Jay Angoff (hereinafter, "Angoff"), the former director of the Missouri Insurance Department, testified as an expert on Johnson's behalf. Angoff testified common insurance practice dictates that insurance carriers question homeowners about prior losses, which includes the date, type of loss, description of loss, and the amount of loss. Angoff testified an insured must reveal prior losses or risk being denied coverage on a future loss due to fraudulent concealment of a material fact during the application process. While agents are precluded by law from asking about prior coverage denials, agents may ask about prior accusations of fraud and inquire with other companies about the insured's denial of a claim. Angoff stated Johnson has to reveal Allstate's findings about his alleged insurance fraud when he applies for insurance in the future if he wants the policy to be enforceable. Angoff opined Allstate's allegations of insurance fraud would tend to deprive Johnson of insurance contracts and business relationships with insurance companies and agents. Moreover, these statements would damage Johnson's reputation with insurance agents and companies. Even if Johnson were to prevail at trial, Angoff testified Johnson still has to disclose Allstate's statements if he wants to get insurance in the future.

Ultimately, "[t]he question of whether [a plaintiff's] damages were caused by the defamatory statement [is] for the jury to decide." *Overcast*, 11 S.W.3d at 71. Based upon the foregoing testimony, we find there was competent and substantial evidence presented to support the jury's award of actual damages to Johnson. Point denied.

Alternatively, Allstate argues in its third point the trial court abused its discretion in denying its after-trial motion for remittitur in that the jury's award of $900,000 in actual damages was excessive and was a result of the jury's passion. There is no dispute this issue has been preserved for appellate review in that it was contained in Allstate's motion for JNOV.

The trial court's denial of a motion for remittitur is reviewed for an abuse of discretion. *Collier v. City of Oak Grove*, 246 S.W.3d 923, 925 (Mo. banc 2008). The trial court's determination will not be disturbed on appeal absent an abuse of discretion so grossly excessive that it shocks the conscience and convinces this Court that both the trial judge and the jury have abused their discretion. *Kiesel Co. v. J & B Properties, Inc.*, 241 S.W.3d 868, 873 (Mo.App. E.D.2008).

"Remittitur is appropriate where the jury's verdict is excessive." *Burrows v. Union Pacific R. Co.*, 218 S.W.3d 527, 541 (Mo.App. E.D.2007). A jury's verdict will be deemed excessive when it exceeds fair and reasonable compensation for the plaintiff's damages.

*Woods v. Friendly Ford, Inc.*, 248 S.W.3d 665, 678 (Mo.App. S.D.2008). This Court will defer to the trial court's decision whether to remit a verdict since the trial court is in a superior position to observe the witnesses, including the plaintiff. *Burrows, supra.*

Here, Allstate argues since the size of the verdict was unsupported by any competent and substantial evidence, it was "obviously the product of bias and prejudice." We disagree. As we found with respect to Allstate's second point, there was competent and substantial evidence to support Johnson's award of actual damages due to the damage his reputation has suffered and how the harm is "going to stay with him . . . and just going to keep going" as a result of the allegations of fraud contained within the denial letter. We cannot say the trial court abused its discretion in denying Allstate's motion for remittitur after hearing the evidence and observing the demeanor of the witnesses. Point denied.

■ In its final point, Allstate argues the trial court abused its discretion in denying its motion for leave to amend its answer to include additional affirmative defenses. Allstate claims had it been granted leave to amend, it would have asserted res judicata and collateral estoppel as affirmative defenses against Johnson's defamation claim, thus entitling Allstate to summary judgment.

Initially, we note a denial of a summary judgment motion is not an appealable order. *Drummond v. Crawford*, 248 S.W.3d 690, 691 (Mo.App. W.D.2008). Therefore, we move to Allstate's argument with respect to the denial of its motion for leave to amend its answer.

■ Rule 55.33(a) permits a pleading to be amended once before a responsive pleading is filed, or any time within thirty days after it is served if no responsive pleading is permitted. "Otherwise, the pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.* The trial court is vested with broad discretion to grant leave to amend the pleadings at any stage of the proceedings. *Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 618–19 (Mo.App. W.D.2006). "In order to show an abuse of discretion, a party has to demonstrate that the trial court's ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Bonney v. Environmental Engineering, Inc.*, 224 S.W.3d 109, 116 (Mo.App. S.D.2007). Allstate carries the burden of demonstrating the trial court clearly and palpably abused its discretion. *Woods v. Friendly Ford, Inc.*, 248 S.W.3d 699, 710 (Mo.App. S.D. 2008).

■ There are a number of factors the trial court should consider when determining whether to grant a party's motion seeking leave to amend his or her petition. These factors include: "(1) hardship to the moving party if leave to amend is not granted; (2) reasons for failure to include any new matter in previous pleadings; (3) timeliness of the application; (4) whether an amendment could cure any defects of the moving party's pleading; and (5) injustice to the party opposing the motion." *Moynihan v. City of Manchester*, 203 S.W.3d 774, 776 (Mo.App. E.D.2006).

Johnson filed his petition for defamation against Allstate and Peterson on February 23, 2004. Allstate and Peterson filed their answer on April 15, 2004. The defendants raised affirmative defenses at this time, but did not assert the defenses of res judicata or collateral estoppel. Allstate and Peterson filed an additional answer

alleging almost identical claims on July 29, 2004.

On March 13, 2007, Allstate filed a motion for leave to amend its answer to include additional affirmative defenses in the defamation action. The attached amended answer included the original affirmative defenses and contained affirmative defenses with respect to the propriety of Johnson's claim for punitive damages. This amended answer did not include res judicata or collateral estoppel. The trial court granted Allstate's motion on March 23, 2007. Six days later, Allstate filed a motion for leave to amend its answer for a second time to correct an averment that was misstated.

Subsequently, Allstate filed a motion for summary judgment on June 25, 2007. In its motion, Allstate argued Johnson was precluded from litigating his defamation claim for many reasons, including the doctrine of res judicata, resulting from the outcome of the federal case. Johnson filed his response to Allstate's motion for summary judgment and alleged, *inter alia,* Allstate had waived the affirmative defenses of res judicata and collateral estoppel because these defenses were not raised in Allstate's answer.

After receiving Johnson's response, Allstate sought to amend its answer yet again. Allstate requested permission to amend its answer to include res judicata and collateral estoppel as affirmative defenses. Allstate stated the amended answer would not submit any allegations of fact that had not already been explored fully through the parties' extensive discovery efforts, would not cause undue delay to the proceedings, and would not prejudice Johnson.

The trial court ultimately denied Allstate's motion for leave to amend its answer and motion for summary judgment. After reviewing the trial court's analysis, we find there was no abuse of discretion in denying Allstate's motion for leave to amend. The trial court noted Allstate defended against both actions simultaneously for ten months until the federal case reached final judgment on December 28, 2004. The trial court also recognized Allstate's two previous amendments in March 2007 that did not include res judicata or collateral estoppel as affirmative defenses. The trial court concluded Allstate failed to raise these affirmative defenses until approximately three years after the defamation suit was filed and approximately thirty months after judgment was entered in the federal case. Further, the trial court determined Allstate failed to put forth any reason why these defenses were unknown or inadvertently overlooked at the time it filed its original answer and subsequent amended answers. We note Allstate likewise failed to address this factor in its brief. Point denied.

The trial court's judgment is affirmed.

ROY L. RICHTER, P.J., and LAWRENCE E. MOONEY, J., concur.